DAVIS, Judge.
 

 *591
 
 This case requires us to determine whether a warrantless search of a probationer's
 
 *747
 
 home was "directly related" to the supervision of his probation as required by N.C. Gen. Stat. § 15A-1343(b)(13). Danny Wayne Powell, Jr. ("Defendant") appeals from his conviction for possession of a firearm by a felon and argues that the trial court erred in denying his motion to suppress evidence found during a search of his residence. Because the State failed to meet its burden of demonstrating that the warrantless search was authorized by N.C. Gen. Stat. § 15A-1343(b)(13), we reverse the trial court's order denying Defendant's motion to suppress and vacate his conviction.
 

 Factual and Procedural Background
 

 On 23 September 2013, Defendant was convicted of felony breaking or entering and sentenced to 6 to 17 months imprisonment. This sentence was suspended, and he was placed on supervised probation for 30 months. At all times relevant to this appeal, he was living in Catawba County.
 

 In March of 2015, Officers Sarah Lackey and Travis Osborne were Probation and Parole officers in Catawba County employed by the North Carolina Department of Public Safety. On 4 March 2015, Officers Lackey and Osborne "were conducting an operation with the U.S. Marshal's task
 
 *592
 
 force service." They were working with Investigator Gary Blackwood of the Street Crime Interdiction and Gang Unit of the Hickory Police Department, Officer Jamie Carey of the North Carolina Department of Public Safety, and "two or three ... U.S. Marshals." These officers were "part of [an] operation" conducting searches of "seven or eight" residences of individuals who were on probation, parole, or post-release supervision in a particular geographic area of Catawba County. The members of the task force utilized a list of probationers provided by the supervisor of Officers Lackey and Osborne. Although Officer Lackey testified at trial that "[t]he list ... was targeting violent offenses involving firearms [and] drugs[,]" she acknowledged during the suppression hearing that "not all offenders that were selected had that criteria." Defendant's name, address, and status as a probationer was contained on the list provided to the task force. Neither Officer Lackey nor Officer Osborne was the probation officer assigned to Defendant.
 

 At approximately 9:30 p.m. that night, the officers arrived at Defendant's residence. Officer Osborne knocked on the front door while Investigator Blackwood and another officer went to the back corner of the house to ensure that no one exited the residence. When Defendant answered the door, Officer Osborne asked him if he was Danny Powell, and Defendant responded affirmatively. Officer Osborne then placed Defendant in handcuffs and directed him to sit down at the kitchen table. Defendant's wife-who was eight months pregnant at the time-also remained in the kitchen along with Defendant's father.
 

 Officer Osborne asked if there were any firearms in the house, and Defendant's wife responded that there was a firearm in the bedroom closet. Officer Osborne remained with Defendant in the kitchen while the other officers went to retrieve the firearm.
 

 While searching the bedroom closet upstairs, Investigator Blackwood found a Mossberg twelve-gauge shotgun and a Mossberg .22 caliber rifle contained in "gun cases or gun sleeves" and determined that the guns were not loaded. He testified that it "was a walk-in type closet ... [and] the guns were on the right-hand side against the wall. There was [sic] some clothing items kind of up against them." He stated that the clothes in front of the guns were "[m]en's clothing" but there were also "female clothing, shoes, ... [and] male shoes" in the closet.
 

 Investigator Blackwood seized the weapons, and Defendant was placed under arrest. On 18 May 2015, he was indicted by a grand jury for possession of a firearm by a felon.
 

 *593
 
 A jury trial was held on 23 September 2015 before the Honorable Patrice Hinnant in Catawba County Superior Court. On the morning of trial, Defendant filed a motion to suppress evidence of the firearms seized from his residence, arguing that the officers' search of his home violated his rights under the Fourth Amendment to the United States Constitution as well as N.C. Gen. Stat. § 15A-1343(b)(13). At the hearing on the motion to suppress, Officer Lackey, Officer Osborne, and Investigator Blackwood testified about their search of Defendant's home. The trial court orally denied Defendant's motion.
 

 *748
 
 At trial, the State presented testimony from Officer Lackey, Officer Osborne, and Investigator Blackwood. Defendant and his wife testified for the defense. The jury found Defendant guilty of possession of a firearm by a felon.
 

 On 14 December 2015, the trial court sentenced Defendant to 12 to 24 months imprisonment. The court also revoked Defendant's probation and activated his sentence from his prior conviction of felony breaking or entering. Defendant gave oral notice of appeal.
 

 Analysis
 

 Defendant's primary argument on appeal is that the trial court erred by denying his motion to suppress. Specifically, he contends the State failed to demonstrate that the evidence offered against him at trial was obtained by means of a lawful warrantless search.
 

 As an initial matter, we must determine whether this issue was properly preserved for appeal. Defendant acknowledges that although he filed a motion to suppress evidence of the firearms seized from his home, he failed to renew his objection when the State sought to admit the evidence at trial. Our Supreme Court has explained that
 

 [t]o preserve an issue for appeal, the defendant must make an objection at the point during the trial when the State attempts to introduce the evidence. A defendant cannot rely on his pretrial motion to suppress to preserve an issue for appeal. His objection must be renewed at trial. [Defendant's] failure to object at trial waived his right to have this issue reviewed on appeal.
 

 State v. Golphin
 
 ,
 
 352 N.C. 364
 
 , 463,
 
 533 S.E.2d 168
 
 , 232 (2000) (internal citations omitted),
 
 cert. denied
 
 ,
 
 532 U.S. 931
 
 ,
 
 121 S.Ct. 1379
 
 , 1380,
 
 149 L.Ed. 2d 305
 
 (2001). Accordingly, Defendant failed to properly preserve this issue for appellate review.
 

 *594
 
 However, our Supreme Court has held that "to the extent [a] defendant fail[s] to preserve issues relating to [his] motion to suppress, we review for plain error" if the defendant "specifically and distinctly assign[s] plain error" on appeal.
 
 State v. Waring
 
 ,
 
 364 N.C. 443
 
 , 468, 508,
 
 701 S.E.2d 615
 
 , 632, 656 (2010),
 
 cert. denied
 
 ,
 
 565 U.S. 832
 
 ,
 
 132 S.Ct. 132
 
 ,
 
 181 L.Ed.2d 53
 
 (2011). Because Defendant has expressly made a plain error argument in his appellate brief, we review his argument under this standard.
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.
 

 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (internal citations, quotation marks, and brackets omitted).
 

 In conducting our review for plain error, we must first determine whether the trial court did, in fact, err in denying Defendant's motion to suppress.
 
 See
 

 State v. Oxendine
 
 , --- N.C.App. ----, ----,
 
 783 S.E.2d 286
 
 , 292 ("The first step under plain error review is ... to determine whether any error occurred at all."),
 
 disc. review denied
 
 , --- N.C. ----,
 
 787 S.E.2d 24
 
 (2016).
 

 The State contends that the warrantless search of Defendant's home was authorized by N.C. Gen. Stat. § 15A-1343(b)(13), which states as follows:
 

 (b) Regular Conditions.-As regular conditions of probation, a defendant must:
 

 ....
 

 (13) Submit at reasonable times to warrantless searches by a probation officer of the probationer's person and of the probationer's vehicle and premises while the probationer is present,
 
 for purposes directly related to the probation supervision
 
 , but the probationer may not be required to submit to any other search that would otherwise be unlawful.
 

 N.C. Gen. Stat. § 15A-1343(b) (2015) (emphasis added).
 

 *595
 
 Normally, "[t]he standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions
 
 *749
 
 of law."
 
 State v. Jackson
 
 ,
 
 368 N.C. 75
 
 , 78,
 
 772 S.E.2d 847
 
 , 849 (2015) (citation and quotation marks omitted). Here, however, the trial court summarily denied Defendant's motion to suppress without making any findings of fact or conclusions of law.
 

 N.C. Gen. Stat. § 15A-977 states that when ruling on a motion to suppress, "[t]he judge must set forth in the record his findings of facts and conclusions of law." N.C. Gen. Stat. § 15A-977 (2015). However, despite this statutory directive, our Supreme Court has held that "only a material conflict in the evidence-one that potentially affects the outcome of the suppression motion-must be resolved by explicit factual findings that show the basis for the trial court's ruling. When there is no conflict in the evidence, the trial court's findings can be inferred from its decision."
 
 State v. Bartlett
 
 ,
 
 368 N.C. 309
 
 , 312,
 
 776 S.E.2d 672
 
 , 674 (2015) (internal citations omitted).
 
 [1]
 

 At a suppression hearing, "the burden is upon the state to demonstrate the admissibility of the challenged evidence[.]"
 
 State v. Cheek
 
 ,
 
 307 N.C. 552
 
 , 556-57,
 
 299 S.E.2d 633
 
 , 636 (1983) (citation omitted). Here, as noted above, the testimony relied upon by the State at the suppression hearing came from three of the officers who participated in the search of Defendant's home. Therefore, the State's contention that the search was lawful under N.C. Gen. Stat. § 15A-1343(b)(13) hinges on the adequacy of the officers' testimony regarding the purpose of the 4 March 2015 search. For this reason, it is necessary to carefully review their testimony on this issue.
 

 Officer Lackey testified, in pertinent part, as follows:
 

 [PROSECUTOR:] And for what purpose on March 4
 
 th
 
 did you go to the defendant's residence?
 

 [OFFICER LACKEY:] We were conducting a warrantless search of his residence with the U.S. Marshal's task force.
 

 *596
 
 [PROSECUTOR:] And other than Officer Osborne and Officer Blackwood who else was with you?
 

 [OFFICER LACKEY:] Task force officer Jamie Carey, who is also employed with the North Carolina Department of Public Safety, as well as to my knowledge, two or three other U.S. Marshals.
 

 ....
 

 [DEFENSE COUNSEL:] Officer Lackey, are you or were you [Defendant]'s supervising officer?
 

 [OFFICER LACKEY:] I am not.
 

 [DEFENSE COUNSEL:] Was Mr. Osborne the supervising officer?
 

 [OFFICER LACKEY:] No.
 

 [DEFENSE COUNSEL:] How was the determination made to search [Defendant]'s residence that evening?
 

 [OFFICER LACKEY:] Part of the operation we were conducting with the U.S. Marshal's task force, Officer Osborne and I were assigned to a specific area of the county. And he was one of the offenders in the area of the county that we were asked to search.
 

 [DEFENSE COUNSEL:] Who asked you to search?
 

 [OFFICER LACKEY:] Our supervisor.
 

 [DEFENSE COUNSEL:] Does your supervisor also work for the U.S. Marshal's Service?
 

 [OFFICER LACKEY:] No, she does not.
 

 [DEFENSE COUNSEL:] Did anybody in your office tell you that he was being searched for any particular reasons?
 

 [OFFICER LACKEY:] Not any particular reason.
 

 [DEFENSE COUNSEL:] Did you or any of the other people that entered the home that evening tell [Defendant] and [Defendant's wife] that you were conducting a random search?
 

 *597
 
 [OFFICER LACKEY:] Yes.
 

 ....
 

 [DEFENSE COUNSEL:] How many people entered the home?
 

 *750
 
 [OFFICER LACKEY:] Let's see, it was myself, Officer Osborne, Officer Terry, Investigator Blackwood, and approximately two, three, maybe four U.S. Marshal officers.
 

 ....
 

 [DEFENSE COUNSEL:] Are you aware of any complaints about [Defendant], and any illegal activity, contraband he might have had, any reason to have gone to his house other than just a random search?
 

 [OFFICER LACKEY:] No, sir.
 

 ....
 

 COURT: So, this was basically a list of persons that were on a special task force list to search if they were on probation, or was probation included as a reason for a condition of the search?
 

 [OFFICER LACKEY]: It was offenders directly on probation or post release. There were some that were selected because they were gang members, but not all offenders that were selected had that criteria. It was also a random selection of offenders as well.
 

 COURT: And this was a list created by federal law enforcement?
 

 [OFFICER LACKEY]: No, it was created by the supervisors in our district to provide to the task force as a guide to go by for searches.
 

 ....
 

 [DEFENSE COUNSEL:] Has there ever been any indication whatsoever that [Defendant] and [Defendant's wife], or anybody there was such [sic] member of a gang, or had any gang activity?
 

 [OFFICER LACKEY:] No, sir.
 

 *751
 

 *598
 
 [DEFENSE COUNSEL:] Did you ever speak with [Defendant]'s probation officer to find out whether or not she had any suspicions of any kind of illegal activity, or anything contrary to his probation?
 

 [OFFICER LACKEY:] No, sir.
 

 Officer Osborne's testimony consisted of the following with regard to this issue:
 

 [PROSECUTOR:] And Officer Osborne, for what purpose were you at the defendant's residence that evening?
 

 [OFFICER OSBORNE:] To conduct a warrantless search.
 

 [PROSECUTOR:] And ... back in March of this year [Defendant] was on probation for a felony conviction arising out of Burke County, isn't that correct?
 

 [OFFICER OSBORNE:] That's correct.
 

 [PROSECUTOR:] And part of his probationary requirements was that he would be subject to warrantless searches and seizures, isn't that correct?
 

 [OFFICER OSBORNE:] Yes, sir.
 

 [PROSECUTOR:] And part of his probation was that while on probation as a convicted felon he would not be able to own firearms or be in the care, custody, and control of firearms, or be around firearms, is that not correct, Officer?
 

 [OFFICER OSBORNE:] That's correct.
 

 [PROSECUTOR:] Okay. Now, you and Officer Lackey were present during this search, is that correct?
 

 [OFFICER OSBORNE:] That's correct.
 

 [PROSECUTOR:] And Officer Blackwood was present during this search, correct?
 

 [OFFICER OSBORNE:] Yes, sir.
 

 ....
 

 [DEFENSE COUNSEL:] You're not [Defendant]'s supervising officer are you?
 

 *599
 
 [OFFICER OSBORNE:] I am not.
 

 [DEFENSE COUNSEL:] And you weren't at the time, were you?
 

 [OFFICER OSBORNE:] Was not.
 

 Finally, Investigator Blackwood testified, in pertinent part, as follows:
 

 [PROSECUTOR:] And for what purpose were you accompanying the probation officers?
 

 [INVESTIGATOR BLACKWOOD:] To assist in a search of the residence for any illegal contraband and weapons.
 

 ....
 

 [DEFENSE COUNSEL:] Has there ever been any indication whatsoever that [Defendant] and [his wife], or anybody there was such [sic] member of a gang, or had any gang activity?
 

 [INVESTIGATOR BLACKWOOD:] No, sir.
 

 [DEFENSE COUNSEL:] Did you ever speak with [Defendant]'s probation officer to find out whether or not she had any suspicions of any kind of illegal activity, or anything contrary to his probation?
 

 [INVESTIGATOR BLACKWOOD:] No, sir.
 

 The North Carolina General Assembly amended N.C. Gen. Stat. § 15A-1343(b)(13) on 30 July 2009. Prior to the amendment, subsection (b)(13) stated, in pertinent part, that a warrantless search of a probationer by a probation officer must be "
 
 reasonably related
 
 to his or her probation supervision[.]"
 
 2009 N.C. Sess. Laws 667
 
 , 672, 673, ch. 372, §§ 9.(a), 9.(b) (emphasis added) (codified at N.C. Gen. Stat. § 15A-1343(b)(13) (2015) ). However, by virtue of the 2009 amendment, this portion of subsection (b)(13) was changed to require that warrantless searches by a probation officer be "for purposes
 
 directly related
 
 to the probation supervision[.]"
 
 See
 
 id.
 

 (emphasis added).
 

 The General Assembly did not define the phrase "directly related" in its 2009 amendment to N.C. Gen. Stat. § 15A-1343(b)(13). It is well established that where words contained in a statute are not defined therein, it is appropriate to examine the plain meaning of the words in question absent any indication that the legislature intended for a technical definition to be applied.
 
 See
 

 *600
 

 State v. Arnold
 
 ,
 
 147 N.C.App. 670
 
 , 674,
 
 557 S.E.2d 119
 
 , 122 (2001) ("Words undefined in the statute should be given their plain and ordinary meaning." (citation omitted)),
 
 aff'd per curiam
 
 ,
 
 356 N.C. 291
 
 ,
 
 569 S.E.2d 648
 
 (2002) ;
 
 Sharpe v. Worland
 
 ,
 
 137 N.C.App. 82
 
 , 88,
 
 527 S.E.2d 75
 
 , 79 (2000) ("Where the General Statutes fail to provide a definition of a term, it is appropriate to turn for guidance to dictionaries." (citations omitted)),
 
 disc. review denied
 
 ,
 
 352 N.C. 150
 
 ,
 
 544 S.E.2d 228
 
 (2000).
 

 The word "directly" has been defined as "in unmistakable terms." Webster's Third New International Dictionary 641 (1966). "Reasonable" is defined, in pertinent part, as "being or remaining within the bounds of reason."
 
 Id.
 
 at 1892. "When the General Assembly amends a statute, the presumption is that the legislature intended to change the law."
 
 State v. White
 
 ,
 
 162 N.C.App. 183
 
 , 189,
 
 590 S.E.2d 448
 
 , 452 (2004) (citation and quotation marks omitted). Thus, we infer that by amending subsection (b)(13) in this fashion, the General Assembly intended to impose a
 
 higher
 
 burden on the State in attempting to justify a warrantless search of a probationer's home than that existing under the former language of this statutory provision.
 

 Although all of our prior caselaw evaluating warrantless searches conducted pursuant to N.C. Gen. Stat. § 15A-1343(b)(13) applies the version of this statutory provision in effect prior to the 2009 statutory amendment, it is nevertheless helpful to review these decisions. In
 
 State v. McCoy
 
 ,
 
 45 N.C.App. 686
 
 ,
 
 263 S.E.2d 801
 
 ,
 
 appeal
 

 dismissed
 

 and disc. review denied
 
 ,
 
 300 N.C. 377
 
 ,
 
 267 S.E.2d 681
 
 (1980), this Court stated that "the United States Constitution is not violated by the requirement that a probationer submit to warrantless searches as a condition of probation. The courts of North Carolina and of other states, have approved of this condition."
 

 Id.
 

 at 690
 
 ,
 
 263 S.E.2d at 804
 
 (citations omitted). We reasoned that "[a]s a condition to probation, defendant had waived his right to be free from warrantless searches conducted in a lawful manner by his probation officer."
 
 Id.
 
 at 691,
 
 263 S.E.2d at 804-05
 
 . We further explained that
 

 [p]ersons conditionally released to society ... may have a reduced expectation of privacy, thereby rendering certain intrusions by governmental authorities "reasonable" which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands. Thus, a probationer who has been granted the privilege of probation on condition that he submit at any
 
 *601
 
 time to a warrantless search may have no reasonable expectation of traditional Fourth Amendment protection.
 

 ....
 

 The official commentary to G.S. 15A-1343 states: This section specifies a number of conditions of probation, primarily ones that will be used fairly frequently, that may be imposed. The list is meant neither to be exclusive nor to suggest that these conditions should be imposed in all cases.
 

 *752
 
 Condition (15),
 
 [2]
 
 dealing with searches, recognizes that the ability to search a probationer in some instances is an essential element of successful probation. It includes two important limits: (1) only a probation officer, and not a law-enforcement officer, may search the probationer under this condition, and (2) the search may be only for purposes reasonably related to the probation supervision.
 

 Id.
 
 at 691-92,
 
 263 S.E.2d at 805
 
 (internal citation, quotation marks, brackets, and formatting omitted and footnote added).
 

 We have since applied this statutory provision on several occasions in the context of evaluating warrantless searches of a probationer's residence. In
 
 State v. Howell
 
 ,
 
 51 N.C.App. 507
 
 ,
 
 277 S.E.2d 112
 
 (1981), the defendant's probation officer received a tip from an informant that the defendant was using drugs. She enlisted the assistance of law enforcement officers to help her conduct a search of the defendant's home, which uncovered the presence of illegal drugs. In moving to suppress the evidence, the defendant argued that the presence of law enforcement officers during the search rendered it unlawful under N.C. Gen. Stat. § 15A-1343(b).
 
 Id.
 
 at 508,
 
 277 S.E.2d at 113
 
 .
 

 We disagreed, holding that "[a] probation officer's search as authorized by G.S. 15A-1343(b)(15) is not necessarily invalid due to the presence, or even participation of, police officers in the search."
 
 Id.
 
 at 509,
 
 277 S.E.2d at 114
 
 . We noted that "it would have been difficult for [the probation officer] to conduct a useful search of the house described in the record, and keep watch of two individuals at the same time."
 

 Id.
 

 We concluded that "we are not persuaded by defendant's argument that the warrantless search was initiated and accomplished by the police and was therefore unreasonable. Through the testimony of [his probation
 
 *602
 
 officer] the evidence is sufficient to support the trial court's finding that 'under the circumstances disclosed by this evidence' the search was reasonable."
 

 Id.
 

 In
 
 State v. Church
 
 ,
 
 110 N.C.App. 569
 
 ,
 
 430 S.E.2d 462
 
 (1993), law enforcement officers contacted the defendant's probation officer after learning that he was in possession of marijuana plants. The probation officer then arrived at the defendant's home and conducted a warrantless search along with law enforcement officers during which the plants were discovered.
 

 Id.
 

 at 573
 
 ,
 
 430 S.E.2d at 464
 
 .
 

 This Court upheld the validity of the search despite the defendant's contention that it was "initiated and conducted by police officers, rather than his probation officer."
 

 Id.
 

 at 576
 
 ,
 
 430 S.E.2d at 466
 
 . We reiterated that "the presence and participation of police officers in a search conducted by a probation officer, pursuant to a condition of probation, does not, standing alone, render the search invalid."
 

 Id.
 

 We explained that the "[e]vidence presented at defendant's hearing tended to establish that the probation officer conducted the search of defendant's premises with the assistance of the officers" and that the purpose of the search was not unlawful.
 

 Id.
 

 (emphasis omitted).
 

 In
 
 State v. Robinson
 
 ,
 
 148 N.C.App. 422
 
 ,
 
 560 S.E.2d 154
 
 (2002), law enforcement officers received an anonymous tip that the defendant was in possession of marijuana at his home. The officers subsequently contacted the defendant's probation officer, and a plan was formed to search the defendant's residence.
 
 Id.
 
 at 424,
 
 560 S.E.2d at 156
 
 . When the officers arrived, the probation officer obtained consent from the defendant to search the home at which point the other officers conducted a warrantless search of the premises, leading them to discover and seize marijuana. The defendant was then charged with multiple drug offenses.
 
 Id.
 
 at 425,
 
 560 S.E.2d at 157
 
 .
 

 On appeal from the denial of his motion to suppress, the defendant argued that the law enforcement officers had used his probation officer's "authority to search [him] in lieu of obtaining a search warrant, thereby resulting in an attempt by [his probation officer] to gain consent to search Defendant's house which was not in furtherance of the supervisory goals of probation, and was therefore unreasonable under the Fourth Amendment."
 
 Id.
 
 at 428,
 
 560 S.E.2d at 159
 
 . We rejected this argument, ruling that because the defendant's probation officer was provided
 
 *753
 
 with information that "indicated ... Defendant was in violation of his probation ... [i]t clearly furthered the supervisory goals of probation for [the law enforcement officers] to forward this information to [him],
 
 *603
 
 and for [the probation officer] to attempt to investigate this information further by seeking Defendant's consent to a search of the house."
 
 Id.
 
 at 428-29,
 
 560 S.E.2d at 159
 
 . Thus, we concluded, "[t]he fact that ... other officers were in the general area of Defendant's home when [his probation officer] approached him about consenting to a search [did] not affect the legality of [the probation officer's] conduct."
 

 Id.
 

 We also find instructive the Fourth Circuit's decision in
 
 United States v. Midgette
 
 ,
 
 478 F.3d 616
 
 , 622 (4th Cir.),
 
 cert. denied
 
 ,
 
 551 U.S. 1157
 
 ,
 
 127 S.Ct. 3032
 
 ,
 
 168 L.Ed.2d 749
 
 (2007). In that case, the defendant's probation officer was informed by a police officer that the defendant "might be in possession of a firearm."
 
 Id.
 
 at 619. After meeting with the defendant at the probation office, the probation officer determined that "it probably would be a good idea to search [the defendant's] house."
 
 Id.
 
 (quotation marks omitted). The probation officer asked New Bern police officers to assist her in searching the defendant's residence. The officers found firearms, ammunition, and marijuana in the home, and he was indicted for possession of a firearm by a felon.
 
 Id.
 
 at 620. The defendant moved to suppress the evidence seized during the search. The trial court applied N.C. Gen. Stat. § 15A-1343(b) and found that the search of the defendant's home was lawful pursuant to a special condition of his probation requiring him to submit to searches by a probation officer for purposes that were "reasonably related to probation supervision."
 
 Id.
 
 at 618-19.
 

 On appeal, the defendant argued that this special condition of his probation violated the Fourth Amendment because it did not require "any degree of certainty that the probationer actually possesses contraband or that he has violated his probation or the law[.]"
 
 Id.
 
 at 622 (citation and quotation marks omitted). The Fourth Circuit explained the purpose of N.C. Gen. Stat. § 15A-1343 as follows:
 

 North Carolina has the ... need to supervise probationers' compliance with the conditions of their probation in order to promote their rehabilitation and protect the public's safety. To satisfy this need, North Carolina authorizes warrantless searches of probationers by probation officers. But North Carolina has narrowly tailored the authorization to fit the State's needs, placing numerous restrictions on warrantless searches. The sentencing judge must specially impose the warrantless search condition, and not all probationers are subject to it; the search must be conducted during a reasonable time; the probationer must be present during the search; the search must be
 
 *604
 
 conducted for purposes specified by the court in the conditions of probation; and it must be reasonably related to the probationer's supervision. These criteria impose meaningful restrictions, guaranteeing that the searches are justified by the State's "special needs,"
 
 not merely its interest in law enforcement.
 

 Id.
 
 at 624 (internal citation omitted and emphasis added).
 

 Here, it is clear from the officers' testimony that the search of Defendant's home occurred as a part of an ongoing operation of a U.S. Marshal's Service task force. At trial, Officer Lackey testified as follows:
 

 [PROSECUTOR:] And for what purpose were you out and on duty that evening, Officer Lackey?
 

 [OFFICER LACKEY:] We were conducting an operation with the U.S. Marshal's task force service....
 

 Moreover, with regard to the goal of the operation, Officer Osborne testified to the following:
 

 [DEFENSE COUNSEL:] The search of [Defendant] was not a targeted search, was it? You didn't specifically pick him for a reason?
 

 [OFFICER OSBORNE:] The list that was made to search was
 
 targeting violent offenses
 
 involving firearms, drugs, that was the target of the search.
 
 [3]
 

 (Footnote and emphasis added.)
 

 While our prior caselaw interpreting N.C. Gen. Stat. § 15A-1343(b) makes clear that
 
 *754
 
 the presence and participation of law enforcement officers does not, by itself, render a warrantless search under the statute unlawful, the State must meet its burden of satisfying the "purpose" element of subsection (b)(13)-a burden that has been rendered more stringent by the 2009 statutory amendment. We are unable to conclude that the State has met that burden here.
 
 See, e.g.
 
 ,
 
 United States v. Irons
 
 , No. 7:16-CR-00055-F-1,
 
 226 F.Supp.3d 513
 
 ,
 
 2016 WL 7174648
 
 *4 (E.D.N.C. Dec. 7, 2016) (although post-release supervisee was required to submit to warrantless searches for purposes reasonably related to his post-release supervision, the warrantless search of his home was
 
 *605
 
 unlawful where "[i]nstead of the search being supervisory in nature, it was conducted as part of a joint law enforcement initiative referred to as Operation Zero Hour").
 

 Were we to determine that the present search was permissible under N.C. Gen. Stat. § 15A-1343(b)(13), we would essentially be reading the phrase "for purposes directly related to the probation supervision" out of the statute. This we cannot do.
 
 See
 

 N.C. Bd. of Exam'rs for Speech Path. v. N.C. State Bd. of Educ.
 
 ,
 
 122 N.C.App. 15
 
 , 21,
 
 468 S.E.2d 826
 
 , 830 (1996) ("Since a legislative body is presumed not to have used superfluous words, our courts must accord meaning, if possible, to every word in a statute."),
 
 aff'd per curiam in part and disc. review improvidently allowed in part
 
 ,
 
 345 N.C. 493
 
 ,
 
 480 S.E.2d 50
 
 (1997). Thus, even assuming the trial court found the testimony of all the testifying officers at the suppression hearing to be credible, the evidence presented by the State was simply insufficient to satisfy the requirements of N.C. Gen. Stat. § 15A-1343(b)(13).
 

 We wish to emphasize that our opinion today should not be construed as diminishing any of the authority conferred upon probation officers by N.C. Gen. Stat. § 15A-1343(b)(13) to conduct warrantless searches of probationers' homes or to utilize the assistance of law enforcement officers in conducting such searches. Rather, we simply hold that on the specific facts of this case the State has failed to meet its burden of demonstrating that the search of Defendant's residence was authorized under this statutory provision.
 

 Having determined that the motion to suppress was erroneously denied, we turn to the second step in our plain error review-whether this error had a probable impact on the jury's determination that Defendant was guilty. Here, this prong is easily met. Had Defendant's motion to suppress been granted, no evidence showing criminal conduct on his part would have been obtained, and thus no basis would have existed to prosecute him for the offense for which he was convicted. Therefore, it is clear that the trial court's erroneous denial of Defendant's motion to suppress had a probable impact on the jury's guilty verdict.
 
 See
 

 Lawrence
 
 ,
 
 365 N.C. at 518
 
 ,
 
 723 S.E.2d at 334
 
 . Accordingly, because Defendant has shown the trial court's denial of his motion to suppress amounted to plain error, we reverse the order denying his motion and vacate his conviction.
 
 [4]
 

 *606
 

 Conclusion
 

 For the reasons stated above, we reverse the trial court's order denying Defendant's motion to suppress and vacate his conviction for possession of a firearm by a felon.
 

 REVERSED AND VACATED.
 

 Judges BRYANT and STROUD concur.
 

 [1]
 

 We take this opportunity to reiterate, however, that even in cases where there is no material conflict in the evidence presented, "findings of fact are preferred."
 
 State v. Norman
 
 ,
 
 100 N.C.App. 660
 
 , 663,
 
 397 S.E.2d 647
 
 , 649 (1990) (citation omitted),
 
 disc. review denied
 
 ,
 
 328 N.C. 273
 
 ,
 
 400 S.E.2d 459
 
 (1991).
 

 [2]
 

 The statutory language currently found in subsection (b)(13) that addresses warrantless searches of a probationer's home was formerly contained in subsection (b)(15).
 

 [3]
 

 We note that there is no suggestion in the record that Defendant's own probation officer was even notified-much less consulted-regarding the search of Defendant's home.
 

 [4]
 

 Based on our ruling that the denial of Defendant's motion to suppress constituted plain error, we need not address his remaining arguments on appeal.