IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-229

 Filed: 1 October 2019

Cabarrus County, No. 17CRS052368-69

STATE OF NORTH CAROLINA

 v.

QUINTON ANDREW JONES, Defendant.

 Appeal by defendant from order entered 9 November 2017 by Judge W. Robert

Bell and judgment entered on or about 29 November 2017 by Judge Joseph N.

Crosswhite in Superior Court, Cabarrus County. Heard in the Court of Appeals 19

September 2018.

 Attorney General Joshua H. Stein, by Assistant Attorney General Alexander G.
 Walton, for the State.

 Everson Law Firm, PLLC, by Cynthia Everson, for defendant-appellant.

 STROUD, Judge.

 Defendant appeals an order denying his motion to suppress and his judgment

for drug-related offenses. Defendant moved to suppress evidence found during a

search of his residence conducted by a probation officer and other law enforcement

officers, alleging that the search was not “directly related” to his probation

supervision under North Carolina General Statute § 15A-1343(b)(13). Because the

trial court’s findings of fact support its conclusion that the search was “directly
 STATE V. JONES

 Opinion of the Court

related” to his supervision, we affirm the order and conclude there was no error in

the judgment.

 I. Background

 Defendant was placed on probation after he was convicted of possession of a

firearm by a felon on 19 January 2017. Cabarrus County Probation and Parole

Officer Michelle Welch began supervising defendant’s probation on 1 February 2017.

Defendant met with Officer Welch and discussed the regular conditions of his

probation, which included warrantless searches of his residence by a probation officer

for purposes directly related to his probation supervision. Officer Welch also

conducted a risk level assessment of defendant, using his criminal history along with

an “Offender Traits Inventory instrument” (“OTI”) used by probation officers. Officer

Welch determined defendant was at “Level 1” for supervision purposes, which meant

that he was at “extreme high risk for supervision which indicates he needs close

supervision in the community.”

 In May 2017, the Kannapolis Police Department, Concord Police Department,

and U.S. Marshals undertook an initiative to perform warrantless searches of certain

probationers in Cabarrus County. Personnel from the Cabarrus County probation

office participated in the initiative. Officer Waylan Graham, a Cabarrus County

Probation and Parole Officer, was involved in the search of defendant’s residence.

The purpose of the initiative was for “high-risk and gang offenders[.]” Officer Graham

 -2-
 STATE V. JONES

 Opinion of the Court

testified that defendant was identified as one of the high risk probationers because

“the type of felony that he had, which is a possession of a gun charge, high risk,

positive drug screen.” Prior to conducting the search, Officer Graham read

defendant’s probation file so he would be familiar with defendant’s case.

 At about 7:46 a.m. on 18 May 2017, officers began the search of defendant’s

residence, where he lived with his cousin and his cousin’s girlfriend. Officer Welch

was aware that defendant’s residence was to be searched but she did not participate

in it. For the searches done by the joint initiative, including the search of defendant’s

residence, the probation department was the lead agency for the search, so probation

officers were the first officers in the residence, and they performed the first sweep of

the residence. Only after the probation officers had entered the residence and secured

the probationer would officers from other law enforcement agencies assist in the

search.

 At defendant’s residence, Officer Graham knocked on the door and defendant

answered. Officer Graham told defendant he was there “to conduct a warrantless

search[,]” and defendant was handcuffed. Officer Graham and three other probation

officers then did the initial sweep of the residence and found marijuana in several

places, including in a cup and a mason jar on the kitchen counter, and marijuana

plants growing in the backyard and “hanging from a clothesline in the laundry room.”

The officers searched the common areas and defendant’s bedroom initially, and then

 -3-
 STATE V. JONES

 Opinion of the Court

obtained consent to search defendant’s cousin’s and his cousin’s girlfriend’s bedroom.

The officers also searched the garage and found an EBT card with defendant’s name

along with ecstasy, heroin, burnt marijuana, a mason jar with marijuana residue,

and digital scales. The girlfriend told one of the officers that defendant used the

garage as a recording studio.

 Defendant was charged with several drug-related felonies as a result of the

drugs and paraphernalia found during the search. On 16 June 2017, Defendant filed

a “MOTION TO SUPPRESS ILLEGAL SEARCH AND SEIZURE[,]” requesting

suppression of the drugs and paraphernalia, and the trial court heard the motion on

26 October 2017. On 9 November 2017, the trial court entered an order denying

defendant’s motion to suppress. On or about 29 November 2017, defendant entered

an Alford plea to all charges and reserved his right to appeal the denial of the motion

to suppress. Defendant appeals both the order of the denial of his motion to suppress

and the judgment of his drug convictions.

 II. Findings of Fact and Conclusions of Law

 Defendant’s only issue on appeal is whether the trial court erred in denying

his motion to dismiss because the search of his residence and garage were reasonable,

arguing specifically that the search was not “directly related” to his probation

 -4-
 STATE V. JONES

 Opinion of the Court

supervision. Defendant challenges 6 of the trial court’s 19 findings of fact as

unsupported by competent evidence:1

 6. Based upon an offender traits inventory evaluation
 conducted at the time he was placed on probation,
 his criminal history and performance on previous
 probations the Defendant was assessed as an
 “extreme high risk” probationer requiring close
 supervision in the community.

 7. Between February 1, 2017 and May 17, 2017 the
 Defendant moved twice and tested positive for drug
 use. Defendant’s use of illegal drugs violated the
 conditions of his probation that he not use or possess
 any controlled or illegal drugs and that he commit
 no criminal offense. His probation officer used her
 discretionary delegated authority to place an
 electronic monitor on the Defendant for a period of
 30 days as a sanction.

 ....

 10. The purpose of the searches was to provide closer
 supervision and oversight to the selected
 probationers because of their high risk status.

 11. A number of teams were assigned to the task. A
 team consisted of probation officers and law
 enforcement officers. The teams were led by the
 probation officers and the law enforcement officers
 were there to provide security and assistance.

 12. The probationers to be searched were selected by the
 probation officers because of the high risk status and
 need for closer supervision. They were not selected

1 Defendant’s brief mentions findings of fact 7, 11, and 14 in the issues presented in the record on
appeal but makes no specific argument regarding these findings, and thus these issues are abandoned.
See N.C. R. App. P. 28(b)(6) (“Issues not presented in a party’s brief, or in support of which no reasons
or argument is stated, will be taken as abandoned.”).

 -5-
 STATE V. JONES

 Opinion of the Court

 at random or by the law enforcement officers nor for
 the purpose of conducting any police investigation.

 13. Graham and several other probation officers went to
 the Defendant’s residence. They were accompanied
 by Kannapolis Police Department (KPD) Officers
 and U.S. Marshals. Graham selected the Defendant
 based upon his risk assessment, suspected gang
 affiliation, and positive drug screen. The purpose of
 the search was to give the added scrutiny and closer
 supervision required of “high risk” probationers
 such as the Defendant.

 14. Prior to going to the Defendant’s house he notified
 the Defendant’s assigned probation officer and read
 Defendant’s case file.

 15. At the residence, . . . PO Graham initiated the search
 by knocking on the residence door. The KPD and
 Marshals remained in the yard. Graham explained
 to the Defendant why they were there and what they
 intended to do. Defendant consented to the search.

 16. Because the Defendant was living at the residence
 with his cousin, his cousin’s girlfriend and a minor
 child only the common areas of the house and
 Defendant’s bedroom were searched initially. That
 search revealed marijuana in plain sight in the
 kitchen and laundry room. It was also found growing
 in a grill in the backyard.

 17. The female gave consent to search her bedroom
 and the garage. Digital scales, heroin and ecstasy
 were found in the garage.

The trial court made the following conclusions of law:

 1. N.C.G.S. § 15A-1413(b)(l3) provides that a probation
 officer may, at reasonable times, conduct
 warrantless searches of a probationer’s person and

 -6-
 STATE V. JONES

 Opinion of the Court

 of the probationer’s vehicle and premises while the
 probationer is present, for purposes directly related
 to the probation supervision.

 2. The issue presented is whether the search of
 Defendant’s residence conducted by probation officer
 Graham was directly related to the probation
 supervision. The Court finds that it was.

 3. PO Graham initiated the search because the
 Defendant was a high risk probationer requiring
 more supervision than most. He had moved
 residences twice within the three months between
 the time he was placed on probation and the date
 of the search. He had tested positive for illegal drug
 use and his probation officer had exercised her
 discretionary delegated authority to place him on an
 electronic monitor for a period of 30 days as a
 sanction.

 4. The presence and participation of Kannapolis Police
 Officers and U.S. Marshals does not change the
 result. Their presence was at the request of the
 probation officers conducting the search and they
 were there to provide security and assistance to the
 probation officers. The search was not part of or in
 response to the initiative of law enforcement nor for
 the purpose of conducting an investigation.

 5. The search was not random or conducted at the
 whim of the probation officer or done in conjunction
 with any law enforcement purpose. Its purpose was
 to supervise the probationer.

Defendant also challenges conclusions of law 2-5 as unsupported by the findings of

fact. But “conclusion of law” 3 is actually a finding of fact and we address it as such.

See Westmoreland v. High Point Healthcare, Inc., 218 N.C. App. 76, 79, 721 S.E.2d

 -7-
 STATE V. JONES

 Opinion of the Court

712, 716 (2012) (“The labels ‘findings of fact’ and ‘conclusions of law’ employed by the

trial court in a written order do not determine the nature of our review.”).

A. Standard of Review

 “When reviewing a motion to suppress, the trial court’s findings of fact are

conclusive and binding on appeal if supported by competent evidence. We review the

trial court’s conclusions of law de novo.” State v. Fields, 195 N.C. App. 740, 742–43,

673 S.E.2d 765, 767 (2009) (citation omitted).

B. Competency of the Evidence

 As to findings of fact 15 and 17, the trial court did not use consent as the basis

of the search but concluded that “N.C.G.S. §15A-1413(b)(13) provides that a probation

officer may, at reasonable times, conduct warrantless searches of a probationer’s

person and of the probationer’s vehicle and premises while the probationer is present,

for purposes directly related to the probation supervision.” Therefore, we need not

address the superfluous findings. See generally Fleming v. Fleming, 49 N.C. App.

345, 348, 271 S.E.2d 584, 586 (1980) (“Defendant was not prejudiced by Judge Styles’

superfluous jurisdictional findings because they were unnecessary to the issue before

the court and were therefore of no effect upon the rights of the parties in the

subsequent enforcement hearing.”).

 As to the remaining challenged findings of fact, defendant does not actually

challenge the findings of fact as unsupported by the evidence but instead contends

 -8-
 STATE V. JONES

 Opinion of the Court

that one of the documents the State relied upon in the officers’ testimony, the OTI,

was not “competent evidence.” Defendant’s argument conflates an argument

regarding admission of the State’s exhibits with his argument regarding whether the

trial court’s findings of fact support its conclusions of law.

 During Officer Welch’s testimony, the State offered two exhibits. Exhibit 1

was the Conditions of Probation form and Exhibit 2 was the Risk Needs Assessment

also referred to as an OTI. Defendant objected to the two exhibits but did not state

any basis for the objection.2 The trial court overruled the objection, and defendant’s

counsel then stated that she wished to be heard. The trial court responded,

“Overruled. Admitted. Denied.” The trial court’s ruling was terse but its meaning

is clear in the context of the transcript. The defendant’s general objection to

admission as evidence of State’s Exhibits 1 and 2 was “[o]verruled.” State’s Exhibits

1 and 2 were “[a]dmitted.” The trial court “[d]enied” defendant’s request “to be heard”

regarding the objection to admission of State’s Exhibits 1 and 2. Defendant did not

make any other objections to the probation officer’s testimony regarding his risk level

and made no further argument before the trial court regarding the admissibility or

2The legal basis for defendant’s evidentiary objection to State’s Exhibits 1 and 2 is not apparent from
the transcript or context of the hearing, nor does defendant argue on appeal about any particular
reason this evidence should not have been admitted. It is difficult to imagine any legitimate basis for
an evidentiary objection to State’s Exhibit 1, the conditions of defendant’s probation. State’s Exhibits
1 and 2 were admitted when defendant’s probation officer was testifying regarding defendant’s
probation supervision and the information they reviewed together regarding his high risk status and
conditions of probation. Even without the exhibits, the probation officer’s testimony alone supports
the trial court’s findings of fact.

 -9-
 STATE V. JONES

 Opinion of the Court

competency of the exhibits as evidence.3 Defendant also did not make a proffer of

additional evidence regarding the exhibits, particularly the OTI noting defendant

was high risk – one of the bases upon which the probation officers determined his

residence would be searched – though it was an available option even after the trial

court overruled the objection to State’s Exhibits 1 and 2.

 Again, defendant does not argue that there was no evidence to support the

findings that the OTI determined he was an “extreme high risk” probationer; that he

had moved twice within three months; that he was suspected of being involved in a

gang; and that he had tested positive for illegal drugs. Instead defendant contends

that the OTI was crucial evidence used against him, and it was not competent

evidence. Defendant argues that “[t]he complete OTI itself was not provided, simply

a one-page synopsis of its purported results, which appears to be pre-populated, is

entirely conclusory, and is non-specific to” defendant.4 But defendant did not make

any objections or requests for the complete OTI; as noted above, to the extent

defendant attempts to present an evidentiary issue on appeal, he did not preserve

any objection to State’s Exhibits 1 and 2 in the trial court and did not argue plain

3 Defendant’s counsel made only two objections in the entire hearing. The first was the general
objection to State’s Exhibits 1 and 2; the second was an objection based upon hearsay later in the
testimony regarding the search.

4Indeed, it would most likely be to defendant’s disadvantage for the State to present further evidence
regarding the OTI or defendant’s risk level determination, as that evidence would most likely be
harmful to defendant – good reason for his counsel not to pursue the objection any further.

 - 10 -
 STATE V. JONES

 Opinion of the Court

error on appeal. The State’s presentation of only the “synopsis” of the OTI may go to

the weight of the evidence, but not its competency as evidence.

 Defendant bases his argument regarding “competency” of the OTI primarily on

cases regarding satellite-based monitoring (“SBM”) of certain sex offenders. But

defendant has conflated two entirely separate issues. The requirements for SBM are

specific to monitoring of sex offenders and are not comparable to the requirements

for random searches of a probationer’s home in accord with the conditions of

probation. Perhaps the OTI’s use of the word “risk” has led defendant to attempt to

equate the risk evaluation tool used in SBM cases, the STATIC-99, with the OTI, but

there is no support in our statutes or case law for this argument. See generally State

v. Kilby, 198 N.C. App. 363, 367, 679 S.E.2d 430, 432–33 (2009) (“The procedure for

SBM hearings is set forth in N.C. Gen. Stat. §§ 14–208.40A and 14–208.40B. N.C.

Gen. Stat. § 14–208.40A applies in cases in which the district attorney has requested

that the trial court consider SBM during the sentencing phase of an applicable

conviction. N.C. Gen. Stat. § 14–208.40B applies in cases in which the offender has

been convicted of an applicable conviction and the trial court has not previously

determined whether the offender must be required to enroll in SBM. . . . The hearing

procedure set forth in N.C. Gen .Stat. § 14–208.40B has two phases; N.C. Gen. Stat.

§ 14–208.40B(c), for purposes of convenience and clarity, we will refer to these two

phases as the qualification phase and the risk assessment phase.” (emphasis added)

 - 11 -
 STATE V. JONES

 Opinion of the Court

(citations omitted)). Unlike SBM, see id., no statute requires the probation officer to

use the OTI or to establish a certain level of “risk” to justify a search incident to

probation; the search must be “directly related to the probation supervision[.]” N.C.

Gen. Stat. § 15A-1343(b)(13) (2015).5 The statutes do not set out any particular

method for the probation officer to decide to make a random search, as long as it is

“directly related to the probation supervision[.]” Id.

 The OTI is simply a tool used by the probation officer to assist in supervising

a probationer and to advise the probationer of the areas in which he needs

improvement. There is no statute requiring any particular result on an OTI to

support a finding that the search is “directly related” to the probation supervision.

The OTI was one of several pieces of information the officers relied upon in their

supervision of defendant, along with defendant’s other characteristics and behavior.

The OTI noted that the information was provided to defendant “to help you

understand the areas of your life that your officer will be discussing with you during

supervision. You can use this information as a guide to help yourself be successful

while under supervision.” The assessment noted defendant had these characteristics:

 You tend to spend time with people who don’t think that
 illegal behavior is a big deal and who sometimes influence
 you to do things that get you into trouble. It appears some
 of the people you hang around, spend most of your time
 with, or even consider your friends are increasing your risk
 of committing a new crime.

5 Since amended. See N.C. Gen. Stat. § 15A-1343 Editor’s Note (2017) (noting three amendments
between 2016-2017).

 - 12 -
 STATE V. JONES

 Opinion of the Court

 It appears you sometimes don’t think how your actions
 affect others and take risks that lead to trouble. If you
 reported you had conduct prior to the age of 15 and/or
 reckless behavior of poor impulse control, you are at a
 greater risk of committing new crime.

 You tend to make quick decisions instead of thinking
 things through. This sometimes gets you into trouble. It
 appears you have problems controlling your behaviors and
 tend not to think before acting which is increasing your risk
 of committing new crime.

The OTI also noted “Problem Life Area[s]” of “[e]mployment” and “[l]egal” and that

defendant’s level of “Interest in Improving (out of 10)” was zero. Defendant had

signed the OTI acknowledging that his probation officer had gone over his level of

supervision and results with him.

C. Search Directly Related to Probation Supervision

 Defendant also relies on State v. Powell, ___ N.C. App. ___, 800 S.E.2d 745

(2017), and this case, while distinguishable, does address how to determine if a search

is “directly related” to probation supervision. Defendant was subject to the regular

conditions of probation:

 As one of the regular conditions of probation, a defendant must:

 (13) Submit at reasonable times to warrantless searches
 by a probation officer of the probationer’s person and
 of the probationer’s vehicle and premises while the
 probationer is present, for purposes directly related
 to the probation supervision, but the probationer
 may not be required to submit to any other search
 that would otherwise be unlawful.

 - 13 -
 STATE V. JONES

 Opinion of the Court

N.C. Gen. Stat. § 15A-1343(b)(13) (emphasis added). In Powell, this Court first

discussed the meaning of the phrase “directly related to the probation supervision,”

which was an amendment to North Carolina General Statute § 15A-1343 in 2009;

previously the statute required a warrantless search to be “reasonably related” to

the probation:

 The General Assembly did not define the phrase
 “directly related” in its 2009 amendment to N.C. Gen. Stat.
 § 15A-1343(b)(13). It is well established that where words
 contained in a statute are not defined therein, it is
 appropriate to examine the plain meaning of the words in
 question absent any indication that the legislature
 intended for a technical definition to be applied.
 The word “directly” has been defined as “in
 unmistakable terms.” “Reasonable” is defined, in pertinent
 part, as “being or remaining within the bounds of reason.”
 When the General Assembly amends a statute, the
 presumption is that the legislature intended to change the
 law. Thus, we infer that by amending subsection (b)(13) in
 this fashion, the General Assembly intended to impose a
 higher burden on the State in attempting to justify a
 warrantless search of a probationer’s home than that
 existing under the former language of this statutory
 provision.

Id. at ___, 800 S.E.2d at 751 (citations and quotation marks omitted).

 In Powell, the trial court “summarily denied Defendant’s motion to suppress

without making any findings of fact or conclusions of law.” Id. at ___, 800 S.E.2d at

749. The search in Powell was part of “an ongoing operation of a U.S. Marshal’s

Service task force.” Id. at ___, 800 S.E.2d at 753. The operation was initiated by the

 - 14 -
 STATE V. JONES

 Opinion of the Court

U.S. Marshal’s Service for its own law enforcement purposes and the searches were

conducted with the assistance of local law enforcement. See id. at ___, 800 S.E.2d at

745. The operation targeted defendants on probation because their conditions of

probation allow warrantless searches. See id. The defendant’s probation officer did

not participate in the search, and there was “no suggestion in the record that

Defendant’s own probation officer was even notified—much less consulted—

regarding the search of Defendant’s home.” Id. at ___ n.3, 800 S.E.2d at 753 n.3.

Officer Lackey, who was not defendant’s probation officer, testified that he had no

particular reason for searching the defendant’s home nor was he aware of “any

complaints about [the defendant], and any illegal activity, contraband he might have

had, any reason to have gone to his house other than just a random search[.]” Id. at

___, 800 S.E.2d at 749-50. Investigator Blackwood testified there was no “indication

whatsoever” that the defendant was involved in any gang activity or that his

probation officer had ever had “any suspicions of any kind of illegal activity, or

anything contrary to his probation[.]” Id. at ___, 800 S.E.2d at 750-51. This Court

ultimately determined that the State had “failed to meet its burden of demonstrating

that the search of [the defendant’s] residence was authorized” under the statute. Id.

at ___, 800 S.E.2d at 754.

 Thus, defendant’s argument that “[t]his case is indistinguishable from State v.

Powell” is not supported by Powell, since the situations are quite different. Compare

 - 15 -
 STATE V. JONES

 Opinion of the Court

id., ___ N.C. App. at ___, 800 S.E.2d at 745. The purpose for the search, the reason

for including defendant in the initiative, and the officers conducting the search are

entirely different. Here, a Cabarrus County Probation Officer reviewed defendant’s

file and decided to include his residence in the searches for the purposes of his

probation supervision. Defendant’s assigned probation officer was aware that

defendant’s residence would be searched, although she did not participate in the

search. The fact that the search was part of a joint initiative with other law

enforcement agencies does not automatically mean the search was not “directly

related” to the probation supervision. In Powell, the search was initiated by a

separate law enforcement agency for its own purposes. Id. Here, the trial court made

findings of fact and conclusions of law, and those findings establish that defendant’s

probation officer had determined him to be an extreme high risk for reoffending based

upon many factors, including that he had moved twice within three months, was

suspected of being involved in a gang, and had tested positive for illegal drugs. A

probation officer reviewed defendant’s file to determine if he should be included in

the searches based upon his history and risk level. Even with no consideration of the

OTI, which defendant contends is not competent evidence, the other findings make

this case entirely distinguishable from Powell. Compare id.

 The only issue presented here under North Carolina General Statute § 15A-

1343(b) is whether the search was “for purposes directly related to the probation

 - 16 -
 STATE V. JONES

 Opinion of the Court

supervision” as defendant does not dispute that the search was conducted at a

“reasonable time” and that he was present. N.C. Gen. Stat. § 15A-1343(b)(13). All of

the evidence, including the OTI, supported the probation officer’s determination that

a warrantless search of defendant’s residence was “directly related” to his probation.

Id. Here, the State met its burden “of demonstrating that the search of [the

defendant’s] residence was authorized” under the statute. Powell, ___ N.C. App. at

___, 800 S.E.2d at 754.

 One of the conditions of defendant’s probation was to “[n]ot use, possess, or

control any illegal drug or controlled substance[.]” Defendant had already had a

positive drug screen and was a “high risk” probationer. The reason for the search

was to supervise defendant and to ensure his compliance with the conditions of his

probation. This situation is entirely different from Powell, where a different law

enforcement agency randomly selected the probationers to be searched and was

admittedly conducting an entirely separate investigation, without even informing the

defendant’s probation officer. See generally Powell, ___ N.C. App. ___, 800 S.E.2d

745. Defendant’s “high risk” status was important to his probation officer because

“high risk” probationers logically require more supervision, and to provide that

supervision, a probation officer may decide to conduct a warrantless search “directly”

related to the supervision. See N.C. Gen. Stat. § 15A-1343(b)(13). This argument is

overruled.

 - 17 -
 STATE V. JONES

 Opinion of the Court

 III. Conclusion

 We affirm the trial court’s order denying defendant’s motion to suppress and

conclude there was no error in the judgment.

 AFFIRMED and NO ERROR.

 Judge ZACHARY concurs.

 Judge MURPHY dissents.

 - 18 -
 No. COA18-229 – State v. Jones

 MURPHY, Judge, dissenting.

 The trial court failed to provide Defendant a true opportunity to be heard on

his argument to suppress the evidence recovered during the warrantless search of his

home. I would vacate the trial court’s order denying Defendant’s motion to suppress

and remand for further proceedings. I respectfully dissent.

 A warrantless search of a probationer’s residence is reasonable if it is “directly

related to the probation supervision.” N.C.G.S. § 15A-1343(b)(13) (2017). As the

Majority notes, this statutory language was changed from “reasonably related” in

2009, but the General Assembly did not specifically define the phrase “directly

related.” In Powell, our only published case discussing this change, we held the State

had not met its burden to prove a warrantless search was directly related to probation

supervision where the purpose of the search in question was investigatory in nature

rather than in furtherance of the supervisory goals of probation. Powell, 253 N.C.

App. at 603-04, 800 S.E.2d at 752. We were also persuaded by the fact that “the

search of [the] Defendant’s home occurred as a part of an ongoing operation of a U.S.

Marshal’s Service task force.” Powell, 253 N.C. App. at 604, 800 S.E.2d at 752. I

agree with the distinction Powell draws between searches that are supervisory in

nature, and are therefore directly related to probation supervision, and those that are

investigatory in nature.

 While reasonable minds can differ on this point, the search in this case was—

with two exceptions—nearly identical to the search in Powell, which we held was not
 STATE V. JONES

 MURPHY, J., dissenting

directly related to the defendant’s probation supervision and therefore must be

suppressed. First, unlike in Powell, although it involved U.S. Marshals and local

police, the search of Defendant’s residence was organized and effectuated primarily

by probation officers. Second, the State argues Defendant’s classification as a “high

risk” probationer makes this case distinguishable from Powell, where the Defendant

was randomly chosen to be searched without consideration of his risk level.

 Admittedly, the fact that the search was executed by probation officers—rather

than police or U.S. Marshals—suggests that the search was executed for the purpose

of probation supervision. Yet, Probation Officer Graham also testified Defendant was

chosen to be searched partly due to previous positive drug screens, which suggests

that Defendant’s residence may have been searched due to the probation officer’s

desire to investigate the extent of Defendant’s involvement in drugs through a

warrantless search. Additionally, there is not a clear picture of why Defendant’s

“high risk” status is important to the State, probation officers, or the trial court’s

decision that the search in question was directly related to Defendant’s probation

supervision.

 As Defendant’s counsel noted during oral argument, “Not only did we object to

the [results of the OTI report]. We asked for a hearing on it, we were shot down. The

appellant wasn’t allowed to argue about that[.]” See Wilmington Sav. Fund v. IH6

Prop., 829 S.E.2d 235, 238 (N.C. Ct. App. 2019) (considering an argument raised at

 2
 STATE V. JONES

 MURPHY, J., dissenting

oral argument and noting our “scope of review is limited by what is included in the

record, the transcripts, and any other items filed pursuant to Rule 9, all of which can

be used to support the parties’ briefs and oral arguments”). I would hold that the

trial court failed to provide Defendant a meaningful opportunity to be heard as to

whether the State could prove he was, in fact, a “high risk” probationer, and the

impact of such a determination for the purposes of a warrantless search.

 At the suppression hearing, Probation Officer Welch’s testimony and Exhibit

2, Defendant’s Risk Needs Assessment, were the only support for the State’s

contention that Defendant was, in fact, a “high risk” probationer.6 When Defendant

attempted to object to the entrance of such evidence, he was denied an opportunity to

be heard by the trial court, which responded only that the objection was “Overruled.

Admitted. Denied.” The record does not provide any reason why the trial court would

not allow Defendant’s counsel to be heard on this matter, especially given its

importance to Defendant’s suppression motion.

 A probationer must receive “full due process” before a court may revoke

probation. State v. Hunter, 315 N.C. 371, 377, 338 S.E.2d 99, 104 (1986). Indeed, a

keystone of our judicial system is the basic premise that “a State must afford to all

individuals a meaningful opportunity to be heard if it is to fulfill the promise of the

Due Process Clause.” Boddie v. Connecticut, 401 U.S 371, 379, 28 L. Ed. 2d. 113, 120

 6Indeed, the record lacks any information about what “high risk” entails or how it is calculated
by a probation officer.

 3
 STATE V. JONES

 MURPHY, J., dissenting

(1971). Here, Defendant was not afforded a meaningful opportunity to be heard on

the issue of whether the State adequately proved he was a “high risk” probationer

and what the impact of such a finding would be. Accordingly, I would vacate the trial

court’s order denying Defendant’s Motion to Suppress and remand for further

proceedings consistent with this dissenting opinion.

 4