STATE OF NORTH CAROLINA v. JULIAN LEIGH STINSON, JR.

No. 7826SC758

(Filed 2 January 1979)

**Searches and Seizures § 23— application for search warrant—personal observation of officer—probable cause shown**

Information contained in an application for a search warrant was sufficient to justify a finding of probable cause by the magistrate and his issuance of the search warrant where such information consisted of allegations by an experienced vice investigator that, on the day before and the day of the search, he observed defendant drive his vehicle to a designated place, go inside a building, stand at an adding machine and tally some white paper slips which he believed to be lottery tickets; on the following day he observed the defendant's vehicle and someone who resembled defendant at the same place four minutes before the officer arrested two persons for violation of lottery laws and seized lottery tickets and money; the officer had knowledge of defendant's prior arrest record and reputation for lottery law violations; and this information based on personal observation was supported by information from a confidential informant, even though the informant's tip might not have been sufficient in itself to justify a finding of probable cause by the magistrate.

APPEAL by the State of North Carolina from *Griffin, Judge*. Judgment entered 22 May 1978 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 29 November 1978.

The State of North Carolina, pursuant to G.S. 15A-979(c), appeals from an order quashing a search warrant and suppressing evidence discovered and seized on 15 February 1978 under a search warrant issued on said date at 11:52 a.m.

The search warrant was issued by Magistrate Roger D. McKinney upon information furnished in the following application:

"APPLICATION FOR SEARCH WARRANT

I, (Insert name and address; or, if a law officer, insert name, rank and agency) L. R. Snider, Vice Investigator, Charlotte Police Department, being duly sworn, hereby request that the court issue a warrant to search the (person) (place) (vehicle) described in this application and to find and seize the items described in this application. There is probable cause to believe that certain property, to wit: Lottery tickets, papers, monies and other lottery paraphernalia (constitutes evidence of) (constitutes evidence of the identity of a

person participating in) a crime, to wit: Dealing in Lotteries and Possession of Lottery Tickets and the property is located (in the place) (in the vehicle) (on the person) described as follows: (Unmistakably describe the building, premises, vehicle or person—or combination—to be searched.) Julian Leigh Stinson, Jr., Negro male, D.O.B. 1-30-46, 5'7" tall, weighing 160 lbs. and a 1964 Oldsmobile vehicle, red in color, North Carolina 1978 tag number FNC 538 registered to Julian Leigh Stinson, 1520 Gunn St., Charlotte, N. C.

The applicant swears to the following facts to establish probable cause for the issuance of a search warrant: I, L. R. Snider, on the 15 day of February 1978 executed a search warrant on Sam Clark and 3000 Barringer Dr., Charlotte, N. C. As a result of the search I seized lottery tickets and money and arrested Sam Clark and Margaret Clark for violations of the state (N.C.) lottery laws. On 14 Feb. 1978 I observed a negro male fitting the description of Julian Leigh Stinson, Jr. drive into the parking lot of the business located at 3000 Barringer Dr. in the same red Oldsmobile vehicle described above at 1020 p.m. LRS I observed the negro male go inside of the building located at 3000 Barringer Dr. and stand at an adding machine a tally up some type of white paper slips which I believe to be lottery tickets. Julian Leigh Stinson, Jr. arrived at 3000 Barringer Dr. four minutes prior to myself serving the search warrant on Sam Clark and 3000 Barringer Dr. I have received information from a confidential and reliable informant that Julian Leigh Stinson, Jr. picks up lottery tickets from lottery ticket writing houses Monday thru Friday. This informant stated to this applicant that Stinson switches vehicles very often. This informant has given me information that lead to the arrest of Emmanuel Brown for violations of the state lottery laws. Julian Leigh Stinson, Jr. has been arrested two times for lottery law violations: 4 Oct 74 & 14 Aug 75 Based on the information contained in this application (*Continue if necessary) I request that a search warrant be issued for Julian Leigh Stinson, Jr. and the 1978 Oldsmobile vehicle described above.

/s/ L. R. SNIDER
Signature of Applicant

Sworn to and subscribed before me
this 15 day of February, 1978.

/s/ ROGER D. MCKINNEY
    Magistrate"

The following property was found and seized upon search immediately after issuance by Officer Snider on the person of defendant or in his 1964 Oldsmobile at 3000 Barringer Drive:

2 Texas Instruments Calculators
1 Brown Handbag and Contents
1 Blue Bank Bag and Contents
484 Lottery Tickets
$229.47 in U. S. currency
1 Magnum Pistol
3 Live Bullets
1 Holster

Following the search defendant was arrested and warrants were issued charging defendant with (1) transporting lottery tickets, monies and lottery paraphernalia used in the operation of the numbers game known as butter, eggs and race lottery, (2) selling tickets used in the operation of a lottery, (3) carrying on a lottery, and (4) carrying a concealed weapon.

On 9 May 1978 defendant moved to quash the search warrant and suppress the evidence on grounds that the warrant was invalid and not in conformity with G.S. 15-26.

On 15 May 1978 at arraignment defendant requested a hearing on the motion to quash. The State requested a continuance because it had no witness present. Judge Griffin denied the State's motion to continue and heard the matter solely on the search warrant and application. The court ruled that the search warrant on its face did not establish probable cause and granted defendant's motion to quash.

The formal order, entered 22 May 1978, recited facts and conclusions of law to the effect that, in summary, the factual allegations in the Application were insufficient, that the allegations based on the personal observations of the affiant were conclusory rather than factual, and that the information from the confidential informant was not sufficient to show reliability.

*Attorney General Edmisten by Assistant Attorney General Joan H. Byers for the State, appellant.*

*Jerry W. Whitley and Kenneth W. Parsons for defendant appellee.*

CLARK, Judge.

The sole question for determination by this Court is whether the trial court erred in ruling that the search warrant was invalid because the sworn affidavit did not provide the magistrate with facts and details sufficient to establish probable cause. If invalid, the Exclusionary Rule was properly invoked by the trial court to exclude as evidence at trial the fruits of the search.

The Exclusionary Rule was established in *Weeks v. United States*, 232 U.S. 383, 58 L.Ed. 652, 34 S.Ct. 341 (1914), as applicable to federal law enforcement officials and was made binding on the states in *Mapp v. Ohio*, 367 U.S. 643, 6 L.Ed. 2d 1081, 81 S.Ct. 1684 (1961). The Rule is a court-established remedy primarily for violation of the Fourth Amendment guarantee against "unreasonable searches and seizures" and is designed to remedy police misconduct.

The Rule has been subjected to periodic criticism. Chief Justice Burger in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 29 L.Ed. 2d 619, 91 S.Ct. 1999 (1971), in a dissenting opinion (403 U.S. at 411-24) severely criticized the use of the Rule, stating that "there is no empirical evidence to support the claim that the rule actually deters illegal conduct of law enforcement officials," (403 U.S. at 416) and he felt that it should be replaced by a more effective deterrent. This dissent has had a narrowing tendency. The Court has been very careful to balance the deterrent effect of the Rule's use against the cost to government and society of losing the use of probative evidence where the Rule's application is attempted in those situations other than on initial criminal trial. In *United States v. Calandra*, 414 U.S. 338, 38 L.Ed. 2d 561, 94 S.Ct. 613 (1974), the court decided that a grand jury witness could not refuse to answer questions on the grounds that they were based on evidence obtained from an unlawful search and seizure. In *United States v. Janis*, 428 U.S. 433, 49 L.Ed. 2d 1046, 96 S.Ct. 3021 (1976), it was held that the

Rule should not be extended to forbid the use in civil proceedings by one sovereign of evidence seized by a criminal law enforcement agent of another sovereign. In *Stone v. Powell*, 428 U.S. 465, 49 L.Ed. 2d 1067, 96 S.Ct. 3037 (1976), the court held that where the state has provided an opportunity for the full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal *habeas corpus* relief on the ground that evidence obtained through unconstitutional means was introduced at trial.

Notwithstanding judicial misgivings about the effectiveness of the Rule and the denial of its application in peripheral proceedings, the use of the Rule in criminal proceedings remains as one of the fundamental safeguards against the infringement of the Bill of Rights in the American criminal law system.

A search warrant should not issue except upon probable cause — facts and circumstances sufficient to warrant a man of reasonable caution to believe that seizable objects are located at the place to be searched. 11 Strong's N.C. Index 3d, Searches and Seizures, § 20; G.S. 15A-244.

In the case *sub judice*, the affiant was L. R. Snider, Vice Investigator, Charlotte Police Department, who in his application for issuance of the search warrant relied on his personal observation of circumstances on the day before and the day of the issuance of the search warrant. The affiant also relied on information from a "reliable informant."

Where the affiant relies heavily on an informant's tip the two-prong test of *Aguilar v. Texas*, 378 U.S. 108, 12 L.Ed. 2d 723, 84 S.Ct. 1509 (1964) and *Spinelli v. United States*, 393 U.S. 410, 21 L.Ed. 2d 637, 89 S.Ct. 584 (1969), must be met. The *first* prong of the test is that the affidavit must state sufficient underlying circumstances to permit a neutral and detached magistrate to understand how the informant reached his conclusion. The purpose of the first prong is to check the method by which the informant gathered the information, *or*, in the absence of a statement dealing with the method, to describe the accused's criminal activity in sufficient detail that the magistrate may know that the information is reasonably reliable. The *second* prong of the test is that the affidavit must state sufficient underlying circumstances establishing the reliability or credibility of the informant. *See, United States v. Harris*, 403 U.S. 573, 29 L.Ed. 2d 723, 91 S.Ct.

State v. Stinson

2075 (1971), where factors considered in determining reliability of the informant included his declaration against his penal interest, the personal interview of the informant by the agent who judged him to be prudent, and the affiant's prior personal knowledge of the accused.

In the case before us, the affidavit does not disclose the method by which the informant gathered the information, but the informant did describe the defendant's criminal activity, *i.e.*, his picking up lottery tickets from writing houses and his switching vehicles often. Is this sufficient underlying circumstance to meet the first prong of the test? The affiant knew the informant and considered him reliable, and the informant had given him information which led to the arrest of Emanuel Brown for violation of the state lottery laws. Is this sufficient underlying information of reliability to satisfy the second prong of the test? We do not find it necessary to answer these two questions because, clearly, the affiant did not rely heavily on this hearsay information, and the magistrate's finding of probable cause could not have been based primarily on the hearsay.

We find that the facts and circumstances recited by the affiant which were based on his personal observation of the defendant on the day before and the day of the search were more detailed and more reliable than the informant's tip. On 14 February 1978, Officer Snider, an experienced vice investigator, observed defendant drive his vehicle to the designated place, go inside the building, stand at an adding machine and tally some white paper slips which he believed to be lottery tickets. On the following day he observed the defendant's vehicle and someone who resembled the defendant at the same place four minutes before the officer arrested the Clarks for violation of lottery laws and seized lottery tickets and money. Officer Snider had knowledge of defendant's prior arrest record and reputation for lottery law violations. We conclude that there was sufficient data contained in the application to justify a finding of probable cause by the magistrate and his issuance of the search warrant. This data was based on the personal observation of the affiant and supported by information from a confidential informant, even though the informant's tip may not have been sufficient in itself to justify a finding of probable cause by the magistrate. In *Jones v. United States*, 362 U.S. 257, 4 L.Ed. 2d 697, 80 S.Ct. 725 (1960), it was

held that the finding of probable cause may be based upon hearsay evidence in whole or in part.

Many cases decided by both the North Carolina Supreme Court and Court of Appeals support the *Jones* decision. We do not consider it necessary to list these cases, but reference is made to the cases compiled in 11 Strong's N.C. Index 3d, Searches and Seizures, §§ 19-31.

We do not agree with the conclusion of the trial court that the application does no more than suggest vaguely suspicious circumstances. It is noted that at the conclusion of the trial the judge ruled that the motion to quash was allowed on the grounds that the warrant on its face did not establish probable cause, and that "the defendant could have been arrested on the spot without a search warrant and his car searched at that time if the defendant was dealing in lottery tickets." It appears that the trial judge concluded that there was probable cause for the arrest of the defendant, and a search of his person and car, when he was on the premises at the time the Clarks were arrested. If so, the statement in the application that defendant was present on the premises at the time of this arrest should be given great weight in determining that there was probable cause for the issuance of the search warrant.

This order appealed from is vacated and this cause remanded for proceedings consistent with this decision.

Vacated and remanded.

Judges MITCHELL and WEBB concur.