IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-714

No. COA21-685

Filed 1 November 2022

Macon County, No. 18 CRS 000493

STATE OF NORTH CAROLINA

v.

DANIEL LUCAS, Defendant.

Appeal by defendant from judgments entered 2 February 2021 by Judge William H. Coward in Macon County Superior Court. Heard in the Court of Appeals 10 August 2022.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General John R. Green, Jr., for the State*

*Lindsay Law, PLLC, by Nicholas A. White, Mary Ann J. Hollocker, and Stephen P. Lindsay, for Defendant-Appellant.*

CARPENTER, Judge.

¶ 1 Daniel Lucas ("Defendant") appeals from final judgments entered upon a plea agreement to challenge the denial of his motion to suppress evidence obtained during the warrantless search of his Franklin, North Carolina home (the "Home"). On appeal, Defendant argues the search violated N.C. Gen. Stat. § 15A-1343(b)(13) because the State failed to show that the officers reasonably believed Defendant's Home was probationer Samantha Green's ("Ms. Green") premises, and that the

search was "directly related" to Ms. Green's probation supervision. Defendant further argues the trial court erred in concluding the search warrant was issued on a sufficient showing of probable cause. For the reasons explained below, we affirm the order (the "Order") denying Defendant's motion to suppress.

## I.    Factual & Procedural Background

This case concerns the warrantless search of Defendant's Home conducted pursuant to N.C. Gen. Stat. § 15A-1343(b)(13). The search was initiated following positive drug screening and drug possession by probationer, Ms. Green, who was reported on multiple occasions by her supervising probation officer as being Defendant's live-in girlfriend. On 25 February 2019, Defendant filed a "Verified Motion to Suppress" seeking to suppress any and all evidence obtained during the search of his Home and property on or about 15 August 2018. On 12 February 2020, Defendant filed a "Supplemental Verified Motion to Suppress."

Beginning on 18 February 2020, Defendant's motions were heard in Macon County Superior Court before the Honorable William H. Coward, judge presiding. Testimony from the hearing revealed the following: In September of 2017, the Macon County District Court placed Ms. Green on supervised probation with a North Carolina Department of Public Safety ("DPS") probation office following the entry of a judgment against Ms. Green related to misdemeanor larceny and forgery offenses. The back of the judgment form stated the regular and special conditions of Ms.

Green's probation, pursuant to N.C. Gen. Stat. § 15A-1343. The conditions included, *inter alia*, Ms. Green:

> 1. [c]ommit no criminal offense in any jurisdiction.
>
> . . . .
>
> 10. [s]ubmit at reasonable times to warrantless searches by a probation officer of [her] person and [her] vehicle and premises while [she] is present, for purposes directly related to the probation supervision, but [she] may not be required to submit to any other search that would otherwise be unlawful.
>
> . . . .
>
> 12. [n]ot use, possess, or control any illegal drug or controlled substance unless it has been prescribed for [her] by a licensed physician and is in the original container with the prescription number affixed on it; not knowingly associate with any known or previously convicted users, possessors, or sellers of any such illegal drugs or controlled substances; and not knowingly be present at or frequent any place where such illegal drugs or controlled substances are sold, kept, or used.

¶ 4    On or about 15 September 2017, Ms. Green's supervising probation officer, Officer Alise Sutton of DPS, conducted an initial intake appointment wherein Ms. Green provided Defendant's Home address as her "premises" address. On the same date, Officer Sutton provided Ms. Green with form DCC-117 – Regular Conditions of Probation – G.S. 15A-1343, which was consistent with the regular probation conditions found on the back of the judgment form. Ms. Green initialed by each condition and signed the form.

¶ 5        Officer Sutton testified that, as a probation and parole officer, her duties include making unannounced visits at probationers' homes and performing discretionary warrantless searches of probationers' homes. A warrantless search by a probation officer is usually a "plain view" search of the home unless something suspicious is found, in which case, a "deeper search" may be performed by the officer. Early on in a probation case, a probation officer determines the areas of the residence in which the probationer does not have access or does not have a privacy interest. As part of a probation case plan, a probation officer performs an initial visit to a probationer's residence, or "home contact," "to determine if the defendant [is] home." Additionally, a probation officer conducts regular, at least once per month, "offender management contacts" in the probation office, and the first question the probation officer asks the probationer is whether their address has changed.

¶ 6        On 17 September 2017, Officer Sutton performed an initial home contact at the Home. Officer Sutton knocked on the glass door and observed Defendant approach the door, and Ms. Green head in another direction. As Ms. Green walked away, she appeared to be hiding something in the sofa. When Officer Sutton told Ms. Green she, Officer Sutton, was going to see what was hidden, Ms. Green admitted to "smoking a pill" and hiding the remaining "burnt foil" in the sofa. Officer Sutton warned Defendant, whom Officer Sutton noted in her report as being the "boyfriend who owns the house," and Ms. Green that she cannot behave in this manner during

subsequent home contacts as the behavior creates a safety concern for the officer and the probationer. Officer Sutton further advised Defendant of two conditions of Ms. Green's probation: (1) that she consent to warrantless searches of her home; and (2) that she has no firearms in her home. Defendant responded he "had no problems" meeting either requirement.

¶ 7 In December 2017, a criminal judgment was entered against Ms. Green in Macon County Superior Court related to pending drug possession charges that preexisted Ms. Green's placement on regular probation. The new judgment included a conditional discharge sentence under N.C. Gen. Stat. § 90-96 as well as a probationary sentence with special conditions.

¶ 8 On 28 December 2017, Officer Sutton performed a warrantless search of Defendant's Home in the presence of Defendant and Ms. Green. During this visit, Officer Sutton walked through the general areas of the Home as well as the hallway and bedroom. Ms. Green showed Officer Sutton her daughter's bedroom and the master bedroom, which Ms. Green described as the bedroom she shared with Defendant. Ms. Green informed Officer Sutton that her friend was sleeping in her daughter's bedroom. Officer Sutton recognized the name of Ms. Green's friend and advised Ms. Green that her friend is a "known drug user." Officer Sutton further explained that it was a violation of Ms. Green's probation for a known drug user to be in the home.

¶ 9        To balance caseloads within the probation office, Officer Sutton transferred Ms. Green's file on 8 May 2018 to Officer Christie Kinsland, who became Ms. Green's primary supervising probation officer. On 4 June 2018, Ms. Green confirmed while in Officer Kinsland's office that the Home was her residence. During June 2018, Officer Kinsland made multiple attempts to perform a "home contact" with Ms. Green. No one was available at the Home at the times of these visits.

¶ 10       On 24 July 2018, Officer Kinsland visited the Home with another officer and spoke to Defendant. Defendant was upset and advised Ms. Green was not home nor had she been home for "several nights." Officer Kinsland observed filled trash bags on the front porch, and Defendant stated he had placed Ms. Green's belongings in those trash bags.

¶ 11       On 26 July 2018, Ms. Green reported to Officer Kinsland, as instructed. She notified Officer Kinsland that she "had worked everything out" with "her boyfriend" and would be returning to his Home that night. On 29 July 2018, Officer Kinsland performed a home contact at the Home and found Ms. Green "standing in the front yard." Ms. Green reported she and Defendant "were doing a lot better and . . . were working things out." Officer Kinsland noted the trash bags of clothes were no longer visible on the porch. On 6 August 2018, Ms. Green visited Officer Kinsland's office for an offender management contact where she confirmed her address as Defendant's Home.

¶ 12        On 15 August 2018, Ms. Green reported to Officer Kinsland to submit to a drug screen. The drug screen came back "positive for cocaine, THC, and opiates." This was Ms. Green's first drug screen that Officer Kinsland had "seen . . . test positive for cocaine." Officer Kinsland performed a pat down search on Ms. Green's person because she was acting nervously, and her behavior was "off." Officer Kinsland found no drugs or contraband during this search.

¶ 13        Officer Kinsland decided to search Ms. Green's vehicle based on her suspicious behavior and drug screen results. Ms. Green admitted to having a pill in the glove compartment when Officer Kinsland asked if she had any drugs or weapons in the vehicle. After the pill was found, Ms. Green stated she had pills in her purse, located in the back seat of the vehicle.

¶ 14        While Officer Kinsland and other officers performed the search of the vehicle, Officer Sutton observed Ms. Green "put[ting] her hands down the front of her pants." Ms. Green then pulled a "baggie full of pills" from the front of her pants. Shortly thereafter, Ms. Green claimed to the officers that she was working as an informant for Detective Matthew Breedlove of the Macon County Sheriff's Office. Officer Sutton called Detective Breedlove to the scene of the Macon County Courthouse. Detective Breedlove arrived and confirmed Ms. Green was not an informant.

¶ 15        Detective Breedlove observed the pills and "formed an opinion that [they were] an oxycodone illegal substance." Officer Kinsland and Detective Breedlove

announced their plans to search Ms. Green's premises. Officers Kinsland and Sutton, Probation Officer John Coker, Detective Breedlove, and Ms. Green headed to Ms. Green's residence, the Home. When they arrived at the Home sometime between 5:00 p.m. and dusk, Defendant was on his porch, and two Hispanic males were standing by a truck in the driveway. The two men claimed to be employees of Defendant. The officers "could smell the obvious [odor] of marijuana . . . emitting from the truck." Detective Breedlove searched the vehicle and found "some green vegetable material [he] believed to be marijuana and some drug paraphernalia . . . ."

¶ 16          Officer Kinsland advised Defendant the officers were there to conduct a warrantless search of the Home as part of Ms. Green's probation, and Defendant stated he "understood." Detective Breedlove remained outside on the deck of the Home for security reasons. As the officers entered the residence, they "immediately . . . detect[ed] . . . a strong odor of marijuana." Officer Kinsland asked Ms. Green if she had any illegal drugs, controlled substances, or drug paraphernalia. Ms. Green directed Officer Kinsland to her bedroom and advised there was marijuana in the "bedside table on her side of the bed." Officer Sutton and Defendant remained in the living room during the search. Detective Breedlove then entered the residence and recovered from a nightstand in the bedroom "a small amount" of what he believed to be marijuana, based on his training and experience.

¶ 17          Officer Kinsland and Officer Coker continued to clear the residence, looking in

places where a person could hide, and made their way down an unlocked stairwell leading to the basement. Defendant "saw [the officers] go down the steps." From halfway down the staircase, Officer Kinsland "saw three long guns in the corner[,] up against the wall." Officer Kinsland also found "a scale and some baggies" as she searched the room. At that point, Defendant objected to the search, contending the officers had no "right to search [the] area due to restricted access." The officers stopped the search and cleared the home while Detective Breedlove headed to his office to prepare a search warrant. At no time prior to the search on 15 August 2018 did Defendant inform the probation officers of any area that "was off limits or [had] limited access . . . ."

¶ 18        Officer Kinsland spoke with Ms. Green while Officer Kinsland waited for Detective Breedlove to return with the search warrant. Ms. Green confided in Officer Kinsland that "there [were] pounds of marijuana in the [basement gun] safe and there was a lot of money . . . and some opiates and some Xanax . . . ."

¶ 19        Detective Breedlove submitted his search warrant application at 9:22 p.m., and the search warrant was executed at 9:50 p.m. that night at Defendant's Home. Detective Breedlove spoke with Defendant, provided him a copy of the executed search warrant, and read the warrant to him. The officers completed the search of the Home and recovered, *inter alia*, forty-two sealed, plastic freezer bags of marijuana; ammunition; a rifle; various pills; and a bag containing $42,594.00 in

United States currency. Both Defendant and Ms. Green were arrested.

¶ 20        On 26 November 2018, Defendant was indicted by a Macon County grand jury on the charges of trafficking in opium or heroin, pursuant to N.C. Gen. Stat. § 90-95(h)(4); trafficking in marijuana, pursuant to N.C. Gen. Stat. § 90-95(h)(1); and knowingly and intentionally maintaining a dwelling house used for keeping and/or selling a controlled substance, pursuant to N.C. Gen. Stat. § 90-108(a)(7).

¶ 21        On 10 July 2020, the trial court entered its written suppression Order, denying Defendant's 25 February 2019 Verified Motion to Suppress and his 12 February 2020 Supplemental Verified Motion to Suppress. The trial court concluded, *inter alia*, (1) "the search of [Ms.] Green's premises was directly related to the purposes of her [probation] supervision"; (2) "the probation officers who conducted the warrantless search on August 15, 2018 reasonably believed that [Defendant's Home] was [Ms.] Green's premises"; (3) "the probation officers' viewing of [evidence, including digital scales, marijuana, baggies, and a large gun safe in Defendant's basement] was proper, and was not a violation of Defendant's statutory or constitutional rights"; and (4) the application of the search warrant complied with the applicable statutory and constitutional requirements and "was adequately supported by probable cause."

¶ 22        On 2 February 2021, Defendant pled guilty to the charges of trafficking in opium or heroin and trafficking in marijuana pursuant to a plea agreement, and the State dismissed the remaining charge. On 8 February 2021, Defendant filed written

notice of appeal. We note Defendant expressly reserved his right to appeal from the Order in the plea agreement. *See State v. Pimental*, 153 N.C. App. 69, 74, 568 S.E.2d 867, 870 (2002) (explaining N.C. Gen. Stat. § 15A-979(b) requires a defendant to notify the State and the trial court during plea negotiations of his or her intention to appeal from an order denying a motion to suppress to avoid waiving the right to appeal following a guilty plea), *overruled on other grounds by*, *State v. Killete*, 2022-NCSC-80, ¶ 16.

## II. Jurisdiction

Defendant contends "Judge Coward's order denying [his] Verified Motion to Dismiss and Supplemental Verified Motion to Dismiss is appealable to the Court of Appeals pursuant to N.C. Gen. Stat. § 15A-979(b)." We acknowledge Defendant's reference to motions to dismiss in the Statement of Grounds for Appellate Review section of his brief is a typographical error. Instead, Defendant's appeal concerns his Verified Motion to Suppress and Supplemental Verified Motion to Suppress. We agree this Court has jurisdiction to address Defendant's appeal from the Order pursuant to N.C. Gen. Stat. § 15A-979(b) (2021).

## III. Issues

The issues before this Court are whether the trial court erred in concluding: (1) a probation officer's belief as to the location of probationer Ms. Green's premises was reasonable, thereby supporting the officers' authority to conduct a warrantless

search of Defendant's Home under N.C. Gen. Stat. § 15A-1343(b)(13); (2) the search warrant was issued on a sufficient showing of probable cause where the officer did not include information about Ms. Green's credibility as an informant or the source of her information; and (3) the warrantless search of Ms. Green's premises was directly related to the purposes of her supervision, as required by N.C. Gen. Stat. § 15A-1343(b)(13).

## IV.    Standard of Review

Our Court's review of a trial court's denial of a motion to suppress "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Unchallenged findings of fact "are deemed to be supported by competent evidence and are binding on appeal." *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (citation omitted). "Conclusions of law are reviewed *de novo* and are subject to full review." *Id.* at 168, 712 S.E.2d at 878 (citation omitted and emphasis added).

At a hearing on a motion to suppress, "the burden is upon the [S]tate to demonstrate the admissibility of the challenged evidence[.]" *State v. Powell*, 253 N.C. App. 590, 595, 800 S.E.2d 745, 749 (2017) (quoting *State v. Cheek*, 307 N.C. 552, 557, 229 S.E.2d 633, 636 (1983)).

## V.    Analysis

Defendant's principal argument on appeal is the trial court erred in denying his motion to suppress.  The State contends Defendant gave implied consent to the search of his home, the search warrant was based on probable cause, and the search was directly related to the supervision of Ms. Green's probation; therefore, we should affirm the Order.  After careful review, we agree with the State.

**A.  Reasonable Basis to Conduct Probationary Search of Defendant's Home**

Defendant challenges the portion of conclusion of law 9, which states, "the probation officers had a reasonable belief that [Defendant's Home] was [Ms.] Green's premises," as not supported by findings of fact.  He also challenges finding of fact 2, which similarly states this conclusion.  Because we conclude finding of fact 2 is a conclusion of law, we review it as such, concurrently with conclusion of law 9.  *See State v. Campola*, 258 N.C. App. 292, 298, 812 S.E.2d 681, 687 (2018) ("If the trial court labels as a finding of fact what is in substance a conclusion of law, we review that 'finding' *de novo*.").

The Fourth Amendment to the United States Constitution, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. Const. amend. IV; *see State v. Smith*, 346 N.C. 794, 798, 488 S.E.2d 210, 213 (1997).

¶ 30        "Consent . . . has long been recognized as a special situation excepted from the warrant requirement, and a search is not unreasonable within the meaning of the Fourth Amendment when lawful consent to the search is given." *Smith*, 346 N.C. at 798, 488 S.E.2d at 213. "The question whether consent to a search was in fact 'voluntary' or was the product of duress or coercion, expressed or implied, is a question of fact to be determined from the totality of all the circumstances." *State v. Motley*, 153 N.C. App. 701, 707, 571 S.E.2d 269, 273 (2002) (citation omitted). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *State v. Stone*, 362 N.C. 50, 53, 653 S.E.2d 414, 417 (2007) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803–04, 114 L. Ed. 2d 297, 302 (1991)).

¶ 31        A warrantless search pursuant to a probation condition has also been found to satisfy the Fourth Amendment prohibition against unreasonable searches. *United States v. Knights*, 534 U.S. 112, 121, 122 S. Ct. 587, 592, 151 L. Ed. 2d 497, 506 (2001). "Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *State v. Robinson*, 148 N.C. App. 422, 428, 560 S.E.2d 154, 158 (2002) (quoting *Knights*, 534 U.S. at 119, 122 S. Ct. at 591, 151 L. Ed. 2d at 505).

¶ 32          In North Carolina, a court may grant the condition of warrantless searches of a probationer. NC. Gen. Stat. § 15A-1343(b)(13) (2021); *see United States v. Midgette*, 478 F.3d 616, 624 (4th Cir. 2007) (discussing how North Carolina has "narrowly tailored" the authorization of warrantless searches under N.C. Gen. Stat. § 15A-1343 to meet the State's needs of supervising probation "to promote [probationers'] rehabilitation and protect the public's safety"), *writ denied*, 551 U.S. 1157, 127 S. Ct. 3032, 168 L. Ed. 2d 749. Under the statute, a probationer must "[s]ubmit at reasonable times to warrantless searches by a probation officer of the probationer's person and of the probationer's vehicle and premises while the probationer is present, for purposes directly related to the probation supervision," as a regular condition of probation. N.C. Gen. Stat. § 15A-1343(b)(13).

¶ 33          In his first argument, Defendant does not challenge the constitutionality of N.C. Gen. Stat. § 15A-1343, nor does he contest that the warrantless search was made at a reasonable time or that Ms. Green was present for the search. Rather, he argues the probation officer's belief that his Home was Ms. Green's "premises" was unreasonable. Defendant provides three reasons as support for this argument. We consider in turn each of Defendant's arguments as to this conclusion of law.

¶ 34          First, Defendant argues "the facts and circumstances available to [Officer] Kinsland as of 15 August 2018 included notice that Ms. Green likely moved out of [his Home] because [Officer] Kinsland had formed that opinion as of 24 July 2018."

We disagree.

While it is true the trial court found as fact that "[Officer] Kinsland concluded, from her conversation with Defendant on July 24, 2018 and from seeing the bags on the porch, that [Ms.] Green and Defendant had 'parted ways,'" the trial court also found as fact: (1) Officer Kinsland saw Ms. Green in Defendant's front yard five days later, on 29 July 2018, during a home contact; (2) Ms. Green told Officer Kinsland during this 29 July 2018 visit that she and Defendant "were doing a lot better and were trying to work things out"; and (3) Ms. Green again verified her address as the Home on 6 August 2018. Based on the events subsequent to 24 July 2018, Officer Kinsland could reasonably conclude Ms. Green and Defendant had reconciled since 24 July 2018, and the couple continued to cohabitate in late July 2018.

Second, Defendant argues Officer Kinsland failed to verify Ms. Green moved back in with Defendant before 15 August 2018 by speaking with Defendant, observing Ms. Green's daughter in the house, verifying Ms. Green had a key to the house, or entering the house. We disagree and conclude such actions were not necessary for Officer Kinsland to form a reasonable belief that Defendant's Home was Ms. Green's premises.

Officer Kinsland not only confirmed with Ms. Green that she was living in Defendant's Home at least three times between 24 July 2018 and 15 August 2018, but Officer Kinsland performed a home contact on 29 July 2018 where Officer

Kinsland found Ms. Green standing in the front yard of the Home. Additionally, Ms. Green told Officer Kinsland on a least two occasions she made up with Defendant. Therefore, it was reasonable for Officer Kinsland to conclude Defendant's Home was Ms. Green's premises on 15 August 2018.

¶ 38        Third, Defendant argues it was unreasonable for Officer Kinsland to rely on Ms. Green's assertion of her home address because "Ms. Green had proven to be untruthful and uncredible." We disagree.

¶ 39        Here, unchallenged findings of fact 9, 11, 18(a)-(f), 18(h)-(j), 18(l)-(m), 18(r), 18(t), 18(v)-(x), 18(z), 19, 33, 35, 38, and 42 demonstrate that before 15 August 2018, Ms. Green verified to her probation officer that her premises was Defendant's Home on at least nine occasions; Ms. Green had never provided an address to her probation officer other than that of the Home from September 2017 to August 2018; Ms. Green never denied living at the Home; and Ms. Green's supervising probation officer made at least one other warrantless search of the Home in the presence of Ms. Green and Defendant to which Defendant did not object. Moreover, Defendant replied he "understood" when Officer Kinsland advised him the officers were at his Home to perform a warrantless search on the evening of 15 August 2018. A reasonable person having such an exchange with another's probation officer would have notified the officer that the probationer no longer resided at the address—if that were true. *See Stone*, 362 N.C. at 58, 653 S.E.2d at 417. Based on the totality of the circumstances,

Defendant's response to Officer Kinsland indicated his implied consent to the search of his Home. *See Motley*, 153 N.C. App. at 707, 571 S.E.2d at 273. Lastly, the above findings support the conclusion "the probation officers had a reasonable belief that the [Home] was [Ms.] Green's premises"; therefore, finding of fact 2 and this portion of conclusion of law 9 are binding on appeal. *See Cooke*, 306 N.C. at 134, 291 S.E.2d at 619.

**B. Substantial Basis for Concluding Probable Cause Existed**

¶ 40        Next, Defendant challenges conclusion of law 21, which provides "[t]he affidavit prepared by Detective Breedlove was adequate to establish probable cause for a search of the Defendant's residence," on the basis it is not sufficiently supported by findings of fact. Likewise, Defendant argues finding of fact 61 is not supported by competent evidence. The State contends the trial court properly concluded the search warrant was based on probable cause by considering only the facts in the affidavit that the trial court found to be "operative and competent," and excluded the remaining facts. After careful review, we agree with the State.

¶ 41        "The common-sense, practical question of whether probable cause exists must be determined by applying a totality of the circumstances test." *State v. Benters*, 367 N.C. 660, 664, 766 S.E.2d 593, 597 (2014) (citation omitted). Our Supreme Court explained that under the totality of the circumstances test,

> [t]he task of the issuing magistrate is simply to make a

> practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*State v. Arrington*, 311 N.C. 633, 638, 319 S.E.2d 254, 257–58 (1984) (citation omitted).

¶ 42        "The affidavit is sufficient if it supplies reasonable cause to believe that the proposed search for evidence probably will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender." *Id.* at 636, 319 S.E.2d at 256 (citation omitted). "Reviewing courts should give great deference to the magistrate's determination of probable cause and should not conduct a *de novo* review of the evidence to determine whether probable cause existed at time the warrant was issued." *State v. Greene*, 324 N.C. 1, 9, 376 S.E.2d 430, 436 (1989) (emphasis added and citations omitted), *vacated on other grounds by*, 494 U.S. 1022, 110 S. Ct. 1465, 108 L. Ed. 2d 603 (1990).

¶ 43        In *State v. Stinson*, our Court considered the issue of whether the inclusion of an informant's tip without a proper basis invalidated a search warrant affidavit where the affiant also included substantial personal observations. 39 N.C. App. 313, 249 S.E.2d 891, *disc. rev. denied*, 296 N.C. 739, 254 S.E.2d 180 (1979). We reasoned

it was not necessary to consider the reliability of the informant or understand where the informant obtained the information when it was clear "the affiant did not rely heavily on th[e] hearsay information, and the magistrate's finding of probable cause could not have been based primarily on the hearsay." *Id.* at 318, 249 S.E.2d at 894. "Where the affiant relies heavily on an informant's tip[,] the two-prong test of *Aguilar v. Texas*, 378 U.S. 108, [84 S. Ct. 1509], 12 L. Ed. 2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, [89 S. Ct. 584], 21 L. Ed. 2d 637 (1969), must be met." *Id.* at 317, 249 S.E.2d at 893–94; *see Illinois v. Gates*, 462 U.S. 213, 239, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527, 548 (replacing the two-prong test of *Aguilar* and *Spinelli* with the totality of the circumstances test). We vacated and remanded the order suppressing evidence, concluding the personal observations described in the search warrant affidavit provided the magistrate with sufficient facts and circumstances to establish probable cause. *Stinson*, 39 N.C. App. at 319, 249 S.E.2d at 894–95.

¶ 44 In the case *sub judice*, we conclude the affiant, Detective Breedlove, did not "rely heavily" on Ms. Green's statements, and the trial court properly considered Detective Breedlove's personal observations in concluding probable cause existed. *See id.* at 318, 249 S.E.2d at 894.

¶ 45 Here, the affiant, Detective Breedlove, described his approximate fourteen years in law enforcement, including his education, training, and experience. Detective Breedlove swore to have experience in investigating the distribution of

prescription medication, the manufacture of marijuana, and drug trafficking. He also swore to have "considerable training and experience in relation to the possession, sale and distribution of controlled substances in and around the Macon County and Western North Carolina area."

¶ 46        The affidavit described Detective Breedlove taking a call from Officer Sutton who told him that Ms. Green made a voluntary statement to Officer Sutton that she was in possession of a large amount of opioids and $1,000.00 in cash. Although the information from Officer Sutton was hearsay, a magistrate could have reasonably found Officer Sutton to be a credible source who obtained the knowledge regarding Ms. Green from her direct observations. *See Arrington*, 311 N.C. at 638, 319 S.E.2d at 257–58.

¶ 47        The affidavit indicated Detective Breedlove met with the probation officers and Ms. Green where they recovered a bag of pills, identified as "oxycodone hydrochloride 30 mg tablets." Detective Breedlove accompanied the probation officers to Ms. Green's residence where they conducted a warrantless search and found a plastic bag "containing green vegetable like matter in a dresser." In a downstairs room, the officers found in plain view a gun safe, "scales with marijuana," and firearms. Thereafter, the officers confirmed Defendant was "a convicted felon out of Florida."

¶ 48        Finally, the affidavit stated the probation officers "gained information from [Ms.] Green that she has known of large amounts of marijuana in the [H]ome," she

"believes that . . . drugs are in the [H]ome currently," and that Defendant is a convicted felon. We note, however, the affidavit does not consider the reliability of Ms. Green or the grounds upon which she formed her belief that drugs could be found in the Home on 15 August 2018. *See Arrington*, 311 N.C. at 638, 319 S.E.2d at 257–58; *see also State v. Crawford*, 104 N.C. App. 591, 596, 410 S.E.2d 499, 501 (1991) ("If the affidavit is based on hearsay information, then it must contain the circumstances underlying the informer's reliability and the basis for the informer's belief that a search will uncover the objects sought by the police.").

¶ 49       Notwithstanding the inclusion of informant information lacking a proper basis, the affidavit demonstrates Detective Breedlove did not "rely heavily" on the hearsay information provided by Ms. Green; thus, we need not consider the propriety of these statements. *See Stinson*, 39 N.C. App. at 317, 249 S.E.2d at 893–94. Rather, Detective Breedlove details the personal observations he made as well as the direct observations of Officer Sutton, which prompted her call to Detective Breedlove. These observations provided the magistrate with a substantial basis for finding the existence of probable cause. *See Stinson*, 39 N.C. App. at 317, 249 S.E.2d at 893; *Arrington*, 311 N.C. at 638, 319 S.E.2d at 257–58.

¶ 50       Further, the trial court, which was charged with the duty of evaluating the facts and applying the appropriate legal standards, properly disregarded the information gained from Ms. Green's hearsay statements. *See State v. McKinney*, 361

N.C. 53, 63, 637 S.E.2d 868, 875 (2006) (considering the trial court's legal and factual basis for denying the defendant's motion to suppress where the search warrant affidavit included tainted information). In its Order, the trial court made the following pertinent findings of fact:

> 59. Although the application for the search warrant contains a lot of other information, on its face, the operative and competent facts are (paraphrased):
>
>> a. That in the course of a warrantless probation search of the residence of [Ms.] Green, marijuana had been found in an upstairs bedroom before there ([the Home]).
>>
>> b. That in the course of the warrantless probation search, probation officers had opened an interior door that allowed access to the downstairs area of the home, and downstairs they had seen "digital scales with marijuana" on a bed in the basement.
>>
>> c. That probation officers had seen a large gun safe in the basement.
>>
>> d. That the owner of the house is a convicted felon.
>>
>> e. That individuals in the driveway of the residence admitted to possession of marijuana in the truck parked with them in the driveway.
>
> 60. The operative and competent facts stated above are based in part on what was told to Detective Breedlove by probation officers.
>
> 61. The operative and competent facts stated above do not include, and are not based upon, statements by [Ms.] Green as to what she believed to be in the house, because she did not state how she came to know such information and her

credibility is highly questionable.

¶ 51      The trial court then made the following pertinent conclusions of law:

> 21. The affidavit prepared by Defendant Breedlove was
> adequate to establish probable cause for a search of
> Defendant's residence.
>
> . . . .
>
> 23.  It was acceptable for Detective Breedlove to base his
> affidavit on statements by fellow probation officers as to
> what they personally saw in plain view.
>
> 24. The court concludes that the application for the search
> warrant in this matter complied with the requirements of
> [N.C. Gen. Stat. §] 15A-244, the Fourth Amendment of the
> United States Constitution, Article I, Section 20 of the
> North Carolina Constitution, and related case law, and
> that the search warrant was adequately supported by
> probable cause.

(Citations omitted).

¶ 52      These findings and conclusions tend to show the trial court considered the facts

and circumstances set forth in the affidavit, and properly determined the weight to

be given to Ms. Green's statements.  *See Arrington*, 311 N.C. at 638, 319 S.E.2d at

257–58.  In finding of fact 61, the trial court identified Ms. Green's statements as

hearsay, found Ms. Green's credibility "highly questionable," and found Ms. Green

did not provide the source of her information.  The officers' testimonies regarding Ms.

Green and the search warrant affidavit support finding of fact 61.  *See Cooke*, 306

N.C. at 134, 291 S.E.2d at 619.

¶ 53          Finding of fact 59 outlines the "operative and competent facts" considered by the trial court, which provided probable cause to believe criminal activity was afoot in the Home. *See Arlington*, 311 N.C. at 636, 319 S.E.2d at 256. Moreover, finding of fact 59 is not challenged on appeal; thus, it is "deemed to be supported by competent evidence and [is] binding on appeal." *See Biber*, 365 N.C. at 168, 712 S.E.2d at 878. Therefore, the trial court did not err in concluding Detective Breedlove's personal observations set out in the search warrant affidavit were sufficient to establish probable cause for a search of the Home. *See Arrington*, 311 N.C. at 638, 319 S.E.2d at 257–58; *Stinson*, 39 N.C. App. at 318, 249 S.E.2d at 894.

**C. Warrantless Search Directly Related to Probation Supervision**

¶ 54          Finally, Defendant argues the trial court erred in concluding the warrantless search of his Home was "directly related" to the purposes of Ms. Green's probation supervision, as mandated by N.C. Gen. Stat. § 15A-1343(b)(13). Relying on *State v. Powell*, 253 N.C. App. 590, 800 S.E.2d 745 (2017), Defendant further argues the search was unlawful because the officers' testimonies revealed their "warrantless search included *a purpose* of investigating potential criminal conduct from which new charges against Ms. Green could be derived." (Emphasis added). The State argues the warrantless search was directly related to Ms. Green's probation supervision because ascertaining whether and to what extent Ms. Green was not in compliance with the terms and conditions of her probation were the duties of the supervising

probation officer. We agree with the State.

¶ 55 Under N.C. Gen. Stat. § 15A-1343, a probation officer may search a probationer's premises as a regular condition of probation when the probationer is present and "*for purposes directly related to the probation supervision . . . .*" N.C. Gen. Stat. § 15A-1343(b)(13) (emphasis added). In *Powell*, this Court interpreted the General Assembly's 2009 amendment to N.C. Gen. Stat. § 15A-1343(b)(13), changing the phrase "for purposes reasonably related to the probation supervision" to "for purposes *directly related* to the probation supervision . . . ." *Powell*, 253 N.C. App. at 599–00, 800 S.E.2d at 751 (emphasis added) ("The word "directly" has been defined as "in unmistakable terms."). The *Powell* Court explained that this amendment demonstrated the General Assembly's intent "to impose a higher burden on the State in attempting to justify a warrantless search of a probationer's home than that existing under the former language of this statutory provision." *Id.* at 600, 800 S.E.2d at 751 (emphasis removed).

¶ 56 In *Powell*, the defendant argued the trial court erred in denying his motion to suppress evidence obtained in a warrantless search of his home. *Id.* at 593, 800 S.E.2d at 748. Specifically, he argued the warrantless search was not "directly related" to the supervision of his probation, as required by N.C. Gen. Stat. § 15A-1343 (b)(13). *Id.* at 591, 800 S.E.2d at 746–47. This Court concluded the search was unlawful because the State failed to meet its burden of showing the warrantless

search complied with N.C. Gen. Stat. § 15A-1343(b)(13). *Id.* at 605, 800 S.E.2d at 754. To reach that conclusion, we carefully considered the testimonies of the officers who searched the defendant's home since this was the evidence upon which the State relied to argue the search was valid. *Id.* at 595, 800 S.E.2d at 749. The testimony revealed the search of the defendant's home was initiated by a United States Marshal's Service task force as part of an ongoing operation "targeting violent offenses involving firearms and drugs." *Id.* at 604, 800 S.E.2d at 753 (emphasis removed). The record did not show the "[d]efendant's own probation officer was even notified—much less consulted—regarding the search of [the d]efendant's home." *Id.* at 604 n.3, 800 S.E.2d at 753 n.3. Additionally, the officers were not aware of the defendant engaging in any illegal activity prior to or at the time of the search. *Id.* at 597, 800 S.E.2d at 750. Importantly, the testimony failed to show the search was "directly related" to the supervision of the defendant's probation. *Id.* at 605, 800 S.E.2d at 754. Thus, the warrantless search was investigatory in nature rather than "supervisory" and was therefore unlawful. *Id.* at 604–05, 800 S.E.2d at 754.

¶ 57 In this case, the record evidence and testimony at the suppression hearing show Ms. Green was placed on supervised probation for eighteen months in September 2017, pursuant to a judgment entered by the Macon County District Court. In December 2017, the Macon County Superior Court entered a judgment against Ms. Green for the conditional discharge of felony drug possession charges,

pursuant to N.C. Gen. Stat. § 90-96(a1). The conditional discharge included twelve months of supervised probation under regular probation conditions as well as special conditions, including Ms. Green enroll in a "drug education school." On 15 August 2018, Ms. Green tested positive for cocaine, THC, and opiates—violating an express regular condition of her probation: to "[n]ot use, possess, or control any illegal drug or controlled substance . . . ." *See* N.C. Gen. Stat. § 15A-1343(b)(15) (2021). According to Officer Kinsland, Ms. Green was acting nervously and tested positive for cocaine for the first time while under Officer Kinsland's probation supervision. During the search of Ms. Green's vehicle, a bag of oxycodone pills was found on her person, which led Officer Kinsland to search Ms. Green's premises.

¶ 58        The facts of the instant case are readily distinguishable from *Powell* because here, Ms. Green's probation officer prompted the search in direct response to Ms. Green's actions, which not only violated her probation conditions but were also unlawful. Conversely, in *Powell*, a distinct law enforcement agency task force initiated the search, using "a random selection of offenders," to further its own goals. *Powell*, 253 N.C. App. at 592, 597, 800 S.E.2d at 747, 750; s*ee also State v. Jones*, 267 N.C. App. 615, 625–26, 834 S.E.2d 160, 167–68 (2019) (distinguishing the facts of the case from *State v. Powell* partly because the search in *Powell* was conducted by a separate law enforcement agency serving its own purpose). Furthermore, Officer Kinsland had reason to believe Ms. Green was engaging in illegal activity and

violating the conditions of her probation following her positive drug screen and vehicle search. These events caused Officer Kinsland to expand the scope of her search to Ms. Green's premises to determine the nature and extent of Ms. Green's probation violations.

¶ 59 In reviewing the testimony of the officers, Detective Breedlove testified he was present at the search of the Home to both "investigate new criminal behavior" *and* "to assist probation." He did not actually take part in the search of the Home or enter the residence until contraband was found. Although the search may have served two purposes, (1) to further the supervisory goals of probation, and (2) to investigate other potential criminal behavior, we conclude the dual purpose of the search did not make the search unlawful under N.C. Gen. Stat. § 1343(b)(13).

¶ 60 When asked on cross examination if she had training as to the meaning of "directly related to the probation supervision," Officer Sutton testified:

> Well, yes. And that would be, like you said, [Ms. Green] was on probation for larcenies and for forgery. It is well established early that she had drug addiction, which that addiction could have been related to these larcenies, could have been related to these forgeries.
>
> So when [Ms. Green] presented a problem with the drug addiction, she was referred to treatment, and we made proper steps. Then on the day in question, the 15th of August when she came in and she not only failed her drug screen, but she possessed an illegal substance on her at that time, to me that just opened the door on into the residence.

¶ 61        Officer Kinsland testified it is common for probation officers to request law enforcement assistance when drugs are found or when there is evidence of a crime because probation officers cannot bring charges—they can only enter probation violations, which are later approved by the chief probation officer and served on the probationer. Officer Kinsland, Ms. Green's supervising probation officer, led the search of the Home although other officers, including Detective Breedlove and Officer Sutton, were present at the Home. Officer Kinsland testified on cross examination that she and the other officers "just upped the search" to Ms. Green's premises following the positive drug screen and the search of Ms. Green's vehicle, where "a trafficking amount" of opiate pills was found.

¶ 62        Further, we note Detective Breedlove's and the deputies' presence at the scene of the warrantless search of the premises did not invalidate the search under N.C. Gen. Stat. § 1343(b)(13). *See State v. Howell*, 51 N.C. App. 507, 509, 277 S.E.2d 112, 114 (1981) (rejecting the defendant's argument that the presence of police officers to help with the warrantless search pursuant to N.C. Gen. Stat. § 1343(b) made the search unreasonable).

¶ 63        Lastly, Defendant does not challenge finding of fact 33, which states Officer Kinsland's purpose in performing the warrantless search of Ms. Green's premises was to "determin[e] if [Ms.] Green was trafficking in controlled substances, with the goal of minimizing recidivism and helping her successfully complete her probation . . . ."

The trial court also made findings, not challenged on appeal, regarding the events that led to the officers' decision to search her premises, including the positive drug screen and vehicle search incident, which are not challenged on appeal. Therefore, these findings "are deemed to be supported by competent evidence and are binding on appeal." *See Biber*, 365 N.C. at 168, 712 S.E.2d at 878. The findings in turn support the trial court's conclusion "that the search of [Ms. Green's] premises was directly related to the purposes of her supervision." *Id.* at 168, 712 S.E.2d at 878.

¶ 64 Therefore, the trial court did not err in concluding the warrantless search of Ms. Green's premises was "directly related" to her probation supervision under Officer Kinsland. *See* N.C. Gen. Stat. § 1343(b)(13); *see also Powell*, 253 N.C. App. at 595, 800 S.E.2d at 749.

## VI. Conclusion

¶ 65 We hold the trial court did not err in concluding the warrantless search of the Home was authorized by N.C. Gen. Stat. § 1343(b)(13) because the State met its burden of showing that the Home was Ms. Green's premises and that the search was directly related to Ms. Green's probation supervision. In addition, we hold the trial court did not err in concluding the affidavit prepared by Detective Breedlove was adequate to establish probable cause for a search of Defendant's Home. Accordingly, we affirm the Order.

AFFIRMED.

Judges MURPHY and JACKSON concur.